**William CAPACCHIONE, Individually and on Behalf of Cristina Capacchione, a Minor, Plaintiff,**

v.

**CHARLOTTE–MECKLENBURG SCHOOLS et al., Defendants.**

**James E. SWANN et al., Plaintiffs,**

v.

**CHARLOTTE–MECKLENBURG BOARD OF EDUCATION et al., Defendants.**

**Michael P. GRANT et al., Plaintiff–Intervenors,**

v.

**CHARLOTTE–MECKLENBURG BOARD OF EDUCATION et al., Defendants.**

**Nos. 3:97–CV–482–P, 3:65–CV–1974–P.**

United States District Court, W.D. North Carolina, Charlotte Division.

Sept. 16, 1998.

John O. Pollard, Kevin V. Parsons, McGuire, Woods, Battle & Boothe, L.L.P., Charlotte, NC, William S. Helfand, Magenheim, Bateman, Robinson, Wrotenbery & Helfand, P.L.L.C., Houston, TX, Lee Meyers, Meyers & Hulse, Charlotte, NC, for William Capacchione.

James E. Ferguson, Luke Largess, Ferguson, Stein, Wallas, Gresham & Sumter, P.A., Charlotte, NC, Adam Stein, Ferguson Stein Wallas Adkins, Gresham & Sumter, Chapel Hill, NC, Elaine Jones, Norman J. Chachkin, Gloria J. Browne, NAACP Legal Defense & Educational Fund, Inc., New York City, for Swann.

James G. Middlebrooks, Irving M. Brenner, Smith, Helms, Mulliss & Moore, LLP, Charlotte, NC, Allen R. Snyder, Kevin J. Lanigan, Maree Sneed, Hogan & Hartson, L.L.P., Washington, DC, Leslie J. Winner, Charlotte–Mecklenburg Board of Education, Charlotte, NC, for Charlotte–Mecklenburg Schools.

Allen R. Snyder, Kevin J. Lanigan, Maree Sneed, Borkowski, Hogan & Hartson, L.L.P., Washington, DC, for the Board of Education of Charlotte–Mecklenburg.

James G. Middlebrooks, Irving M. Brenner, Smith, Helms, Mulliss & Moore, LLP, Charlotte, NC, Allen R. Snyder, Kevin J. Lanigan, Maree Sneed, Hogan & Hartson, L.L.P., Washington, DC, for Susan Burgess and Eric Smith.

James G. Middlebrooks, Irving M. Brenner, Smith, Helms, Mulliss & Moore, LLP, Charlotte, NC, Allen R. Snyder, Kevin J. Lanigan, Maree Sneed, Borkowski, Hogan & Hartson, L.L.P., Washington, DC, Leslie J. Winner, Charlotte–Mecklenburg Board of Education, Charlotte, NC, for Arthur Griffin.

A. Lee Parks, K. Lee Adams, Kirwan, Parks, Chesin & Miller, P.C., Atlanta, GA, Thomas J. Ashcraft, Charlotte, NC, for Intervenor–Plaintiffs.

## MEMORANDUM AND ORDER

ROBERT D. POTTER, Senior District Judge.

THIS MATTER is before the Court on Motion of Plaintiff Capacchione and Plaintiff–Intervenors Grant et al. ("Capacchione"), filed 17 August, 1998, to Compel Answers to Interrogatories and for Leave to Serve Additional Interrogatories [document no. 68]. Defendant Charlotte–Mecklenburg Schools et al. ("CMS") filed an opposition on 27 August 1998 [document no. 73], and Plaintiffs James E. Swann et al. ("Swann") filed a response on August 31, 1998 [document no. 74]. On 4 September 1998, Capacchione filed a reply [document no. 75].

Capacchione seeks an order compelling CMS to respond with greater specificity to Interrogatories 1, 3–19, and 21–25 of the First Set of Interrogatories.[1] Capacchione served these interrogatories on CMS on 21 May 1998, and received responses thereto on 23 June 1998. Capacchione also seeks leave to serve an additional fifty interrogatories. CMS argues that its objections to Capacchione's interrogatories were proper and that the request for additional interrogatories is unwarranted. Swann filed a response, asking the Court to extend the discovery dead-

---

1. Capacchione's First Set of Interrogatories contained a total of twenty-five interrogatories. The Court will not rule on CMS's objections to Interrogatories 2 and 20, which were not addressed in Capacchione's moving brief.

lines in light of the issues raised by Capacchione's motion.

## I. Standard for Discovery

The Federal Rules of Civil Procedure permit broad discovery of "any matter, not privileged, which is relevant." Fed.R.Civ.P. 26(b)(1). "The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* This rule is construed liberally. *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 104 (E.D.N.C.1993). Discovery requests are undoubtedly proper when they lead to relevant or potentially relevant information that will advance the litigation by clarifying a party's contentions and apprising a party of what they must seek to disprove. *Mack v. W.R. Grace & Co.*, 578 F.Supp. 626, 638 (N.D.Ga.1983).

## II. CMS's Objections

### A. Contention Interrogatories

Capacchione complains that CMS was evasive and non-responsive in answering several interrogatories that inquired into the factual bases of CMS's contentions. These interrogatories address factual issues relating to one of the central issues in this case: whether CMS has achieved unitary status by eliminating vestiges of past discrimination, as ordered by this Court to do so, most recently, in *Swann v. Charlotte–Mecklenburg Board of Education*, No. 1974 (W.D.N.C. April 17, 1980).

Capacchione requested information regarding racial compositions, student assignment and enrollment, faculty and staff assignment, educational programs, extracurricular activities, school facilities and capital resources, school site selection and construction, transportation, discipline, and student testing and achievement. CMS concedes that Capacchione's interrogatories "are potentially applicable to [Capacchione's] claim that CMS has achieved unitary status" and that "Plaintiffs are entitled to these facts." (CMS's Opp'n Mot. Compel at 6, 7.) Moreover, CMS promises to "seasonably supplement" its responses as it "diligently and expeditiously" pursues its investigation. (*Id.* at 7, 9.) In sum, CMS raises no real challenge to the substance of these "contention interrogatories" but, instead, challenges the *timing* of these interrogatories, claiming that they are premature.

Contention interrogatories are those interrogatories that seek information regarding a party's opinions or contentions that relate to facts or the application of law to facts. Fed.R.Civ.P. 33(c); 7 *Moore's Federal Practice* § 33.02[2][b] (3d ed.1998). Examples of proper contention interrogatories include asking a party to (1) state its contentions or clarify whether it is making a contention, (2) articulate the facts underlying a contention, (3) assert a position or explain that position in relation to how the law applies to the facts, and (4) explain the legal or theoretical basis behind a contention. 7 *Moore's Federal Practice* § 33.02[2][b]. Due to the nature of contention interrogatories, they are more appropriately used after a substantial amount of discovery has been conducted—typically, at the end of the discovery period. Fed.R.Civ.P. 33(c); *McCarthy v. Paine Webber Group, Inc.*, 168 F.R.D. 448, 450 (D.Conn.1996); *Nestle Foods Corp. v. Aetna Casualty & Sur. Co.*, 135 F.R.D. 101, 110–11 (D.N.J.1990).

The Court finds that Interrogatories 1, 3–5, 9–18, 22, 24, and 25 were properly propounded contention interrogatories, as CMS seems to acknowledge. These interrogatories deal directly with whether CMS has achieved unitary status. On the other hand, CMS's objection to the timing of such interrogatories was not without justification. CMS will be allowed to supplement its responses at a later date, which it has promised to do.

The Court notes that the Pretrial Order and Case Management Plan, filed 10 April 1998 [document no. 42], provides that fact discovery shall be completed by 1 October 1998 and that expert witness reports are due 1 November 1998.[2] Because the preparation of CMS's expert witness report(s) undoubtedly will involve an analysis of the factual

---

**2.** The actual due date is 2 November 1998, as 1 November 1998 falls on a Sunday.

information requested by Capacchione in its contention interrogatories, CMS's supplementation of the First Set of Interrogatories should occur at or near the same time. The Court, therefore, orders CMS to respond to Interrogatories 1, 3–5, 9–18, 22, 24, and 25 no later than 2 November 1998. CMS shall fully and completely disclose the requested information, if available, as such information will materially advance this litigation. The Court admonishes CMS that it must disclose the requested factual information and not mere legal conclusions.

### B. Rule 33(d) Responses

A party may produce business records in lieu of answering interrogatories where the answer may be derived or ascertained from such records. Fed.R.Civ.P. 33(d). This rule, however, has the following express limitation: "A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained." *Id.; see T.N. Taube Corp. v. Marine Midland Mortgage Corp.,* 136 F.R.D. 449, 455 (W.D.N.C.1991). This express limitation is meant to "make it clear that a responding party has the duty to specify, by category and location, the records from which answers to interrogatories can be derived." Fed.R.Civ.P. 33 advisory committee's note.

■ A party that responds to an interrogatory under the provisions of Rule 33(d) abuses this option when the responding party simply directs the interrogating party to a mass of business records or offers to make all of their records generally available. *Herdlein Techs., Inc. v. Century Contractors, Inc.,* 147 F.R.D. 103, 105 (W.D.N.C.1993); Fed.R.Civ.P. 33 advisory committee's note. In *Herdlein,* 147 F.R.D. at 105, and in *T.N. Taube,* 136 F.R.D. at 455–56, this Court found that the responding parties failed to respond to interrogatories with the requisite candor and specificity when they merely stated that the information was available from documents they already had produced.

■ In the case at bar, CMS invoked Rule 33(d) in responding to Interrogatories 4, 6–8, 12, 22, 24, and, by reference, 10, 11, 16 and 25. Capacchione asserts that CMS did not comply with the specification requirement. In response to certain interrogatories, CMS referred to "documents contained in files labeled to indicate that they contain" either "student enrollment data" (Interrogatories 4 and, by reference, 25), "data on student assignment" (Interrogatories 6, 12, 24, and, by reference, 10, 11, 16, and 25), "information regarding federal financial assistance" (Interrogatories 7 and 8), or "student achievement data" (Interrogatory 22). (Capacchione's Mem. Supp. Mot. Compel, Ex. B.) CMS argues that such responses adequately identify the requested information and also that the burden of deriving or ascertaining the answer was substantially the same for both parties within the meaning of Rule 33(d).

According to Capacchione, the referenced files are located amongst approximately 200 boxes or, otherwise, were made generally available to Capacchione over a previous three-week period. (Capacchione's Mem. Supp. Mot. Compel at 4–5.) Likewise, the *Swann* plaintiffs describe the "sheer volume" of CMS's document production as "some 180 boxes, still to be supplemented by [CMS]" and also note that numerous boxes were delivered with no indication of their contents except for the Bates stamp numbers of the pages inside. (Swann's Resp. Mot. Compel at 3.)

Given the large mass of documents produced, CMS cannot seriously contend that it adequately identified the requested information when it vaguely referred to a category of files. CMS is in a far better position to locate the documents containing the requested information and to direct Capacchione to the documents in question. After all, these are all CMS's own records, which CMS has organized and maintained throughout the twenty-three-year period covered in the request. By providing only vague references to categories of files, CMS appears to be sending Capacchione on a fruitless and diversionary fishing expedition with no clear direction.

■ CMS's complaints about the burdens that further specification would impose are unavailing. Burden is inherent in all dis-

covery requests. Requiring a responding party to perform extensive research or to compile substantial amounts of data and information does not automatically constitute an undue burden. *See, e.g., Fagan v. District of Columbia*, 136 F.R.D. 5, 7 (D.D.C. 1991) (ordering answers to interrogatories despite inefficiencies in the responding party's filing system); *In re Folding Carton Antitrust Litig.*, 83 F.R.D. 256, 259 (N.D.Ill. 1979) (ordering production of information on purchasing practices over a fifteen-year period, despite burden and expense, because information was relevant to key issues). Imposing such a burden is particularly proper where, as here, the information sought is crucial to the ultimate determination of a crucial issue and where the location of the documents is best known by the responding party.

Accordingly, the Court orders CMS to supplement its responses to Interrogatories 4, 6–8, 12, 22, 24, and, to the extent necessary, 10, 11, 16 and 25. At a minimum, responses shall identify the particular box containing such documents. Responses also shall identify, to the extent possible, the particular file(s) in which the information is found, for example, by date, file number, folder number, and so on. References to broad categories of files are inadequate. In short, CMS must instruct Capacchione how to retrieve such information in the most efficient way possible. CMS shall provide all directories, compilations, abstracts, indexes, or summaries that will aid in finding such information. CMS shall complete these responses no later than 1 October 1998, the fact discovery deadline.

**C. Objections for Vagueness and Ambiguity**

■ No particular form for interrogatories is mandated by the Federal Rules. Fed.

R.Civ.P. 33. Thus, a party has substantial latitude in drafting interrogatories. Still, interrogatories must be sufficiently definite, clear, and concise, and they must adequately advise the interrogated party of the information requested. *Babcock Swine, Inc. v. Shelbco, Inc.*, 126 F.R.D. 43, 45 (S.D.Ohio 1989). An interrogatory is definite "so long as it is clear what it is the interrogated party is called on to answer." *Struthers Scientific & Int'l Corp. v. General Foods Corp.*, 45 F.R.D. 375, 379 (S.D.Tex.1968). "The inquiries need not be phrased in terms of technical precision." *Id.*

CMS does not explain what was indefinite in the sixteen interrogatories to which it objected as vague, ambiguous, or misleading.[3] The Court does not find any of the propounded interrogatories to be unreasonably vague or ambiguous and, therefore, overrules CMS's objections. The Court advises CMS to consult Capacchione for further clarification if CMS is confused about what Capacchione is asking. CMS shall fully and completely respond to Interrogatories 1, 4, 9–18, and 22–25 with such answers as can be explicitly given. The Court will permit CMS to qualify its answers as may be necessary to prevent any perceived uncertainty. *Id.* (citing *Liquidometer Corp. v. Capital Airlines, Inc.*, 24 F.R.D. 319, 325 (D.Del.1959)).

**D. Disclosure of Trial Witnesses and Exhibits**

Interrogatory 19 asks CMS to disclose the identity of its trial witnesses, experts and non-experts, and to provide a summary of each witness's testimony. Interrogatory 21 asks CMS to identify each documentary exhibit or other physical evidence to be used at trial or any hearing. The Court agrees with CMS that such requests may be premature at this time. Notably, the deadline

---

**3.** CMS only discusses Interrogatory No. 9, which it labels "virtually incomprehensible." Interrogatory No. 9 states:

> Please state in full detail each and every fact and identify any study or other documents which you contend demonstrates or evidence, in whole or in part, that the residential housing patterns within the geographic boundaries of CMS would cause, in whole or in part, a resegregation of the school system.

It seems clear to the Court that this contention interrogatory simply asks for the factual basis for any assertion by CMS that the school system would be resegregated due to residential housing patterns in the absence of race-based school assignments. If CMS has no such facts or does not make such a contention, it should say so. Otherwise, CMS should provide the requested information.

for expert witness designation is not until 2 October 1998. (Pretrial Order § II.(1).) Therefore, the Court will deny Capacchione's motion as to Interrogatories 19 and 21. Yet, CMS must supplement its responses, as it promised, when such information becomes known.

### E. Violation of Twenty–Interrogatory Limit

■ The Federal Rules of Civil Procedure permit a party to serve up to twenty-five interrogatories, unless limited by order or local rule. Fed.R.Civ.P. 26(b)(2), 33(a). Here, the Pretrial Order, section II, subsection (4), states that interrogatories must comply with the specific requirements of the Civil Justice Reform Act Plan. The Civil Justice Reform Act Plan limits the number of interrogatories in "standard" track cases, such as this case, to "no more than twenty (20) single-part interrogatories per party ... without prior approval of the Court or mutual consent of the parties." Civil Justice Expense and Delay Reduction Plan under the Civil Justice Reform Act of 1990, § One.II.A.2 (as amended Dec. 16, 1994). This limit recognizes the time and expense involved in answering interrogatories and acknowledges that interrogatories might otherwise be used as a means of harassment. The limit also serves to force parties to make prudent and constructive use of this discovery device.

Capacchione violated this restriction by serving twenty-five interrogatories. Yet, CMS, by responding to Interrogatories 21–25 without moving for a protective order, waived any objection on grounds of the twenty-interrogatory limit. As stated by this Court: "The responding party must object *(to the Court)* to the number of interrogatories before responding in order to rely on this rule." *Herdlein,* 147 F.R.D. at 104 (emphasis added); *see also Meese v. Eaton Mfg. Co.,* 35 F.R.D. 162, 166 (N.D.Ohio 1964) (deeming an objection waived where the party simultaneously objected and answered responsively to an interrogatory); *accord Moses v. State*

*Farm Mut. Auto. Ins. Co.,* 104 F.R.D. 55, 58 (N.D.Ga.1984) (opining that an objection to an interrogatory that also was answered could have been treated as waived, though the court, in its discretion, declined to do so). Just as the responding party is not entitled to randomly select which of the twenty interrogatories it will answer, the propounding party is not now obligated to select from which of the twenty interrogatories it will seek to compel answers, as suggested by CMS.[4] CMS's general and specific objections are deemed waived.

### III. Capacchione's Motion for Leave to Serve Additional Interrogatories

■ A court may permit a party to serve additional interrogatories to the extent such discovery is not unreasonable, unnecessary, or unduly burdensome. Fed.R.Civ.P. 26(b)(2), 33(a). Leave of court is required so that the court may examine the circumstances before the parties propound an unreasonable number of interrogatories. 7 *Moore's Federal Practice* § 33.30[3][a].

■ With regard to the current motion, Capacchione's moving brief does not adequately set forth why up to fifty additional interrogatories are needed, nor does the brief explain the nature or subject matter of the additional interrogatories. Capacchione merely states that CMS's non-responsiveness to the first interrogatories justifies the additional interrogatories. Yet, assuming that CMS responds to the current contention interrogatories as promised and as ordered, additional interrogatories would not be warranted on this basis. Capacchione may refile a Motion for Leave to Serve Additional Interrogatories provided such motion (i) certifies that CMS would not consent to the additional interrogatories, (ii) sets forth the interrogatories to be served, and (iii) makes an express showing of good cause, i.e., that the benefits of further discovery by interrogatories outweigh the burdens imposed on the responding party.

---

**4.** In the absence of a protective order, the responding party's best course for adequately preserving its objections to supernumerary interrogatories is to answer up to the numerical limit and object to the remainder without answering. 7 *Moore's Federal Practice* § 33.30[1].

## IV. Capacchione's Request for Sanctions

The decision to grant expenses or order sanctions is within the sound discretion of the Court. *T.N. Taube*, 136 F.R.D. at 457; *see* Fed.R.Civ.P. 37(a)(4)(A), (d). Here, the Court believes that, under the circumstances, the issuance of sanctions would be unjust. While Capacchione's motion is granted in part—because CMS did not fully comply with the provisions of Rule 33(d)—CMS's opposition was not wholly without justification. CMS has indicated that it will in good faith respond to Capacchione's contention interrogatories at the appropriate time and that it will supplement its responses when possible. The bulk of the information sought by Capacchione should be exchanged on 2 November 1998, when the parties' expert reports are due. At that time, sanctions may become warranted if CMS attempts to evade Capacchione's legitimate discovery attempts.

## V. Swann's "Motion" for Extension of Discovery Deadlines

█ Swann, in its response, purports to make a motion to extend the discovery deadlines. The Court will not entertain "motions" that are simply mentioned in a response brief. The proper procedures for filing motions for discovery extensions are specifically set forth in section II, subsection (2) of the Pretrial Order.

**NOW, THEREFORE, IT IS ORDERED** that:

1. Capacchione's Motion to Compel Answers to Interrogatories be, and hereby is, **GRANTED IN PART** and **DENIED IN PART**, as set forth above;

2. Capacchione's Motion for Leave to Serve Additional Interrogatories be, and hereby is, **DENIED**;

3. Capacchione's Request for Sanctions be, and hereby is, **DENIED**; and

4. Swann's Request for Extension of Discovery Deadlines be, and hereby is, **DENIED**.