**ARCHER DANIELS MIDLAND COMPANY, Plaintiff,**

v.

**AON RISK SERVICES, INC. OF MINNE-SOTA, formerly d/b/a Rollins Hudig Hall of Minnesota, Inc., formerly d/b/a Rollins Burdick Hunter of Minnesota, Inc., Defendant.**

Civ. No. 97–2185(JRT/RLE).

United States District Court, D. Minnesota.

June 7, 1999.

Aubrey M. Daniel, III, William D. Langford, Jr., Philip A. Sechler, Williams & Connelly, Washington, DC, Thad A. Davis, Kara L. Benson, Jerry W. Snider, Faegre & Benson, Minneapolis, MN, for plaintiff.

C. Eric Hawes, Alan L. Kildow, Larkin Hoffman Daly & Lindgren, Bloomington, MN, Eliot R. Hudson, Shand S. Stephens, San Francisco, CA, Watson B. Tucker, Tucker Law Office, Chicago, IL, for defendant.

John M. Bray, Kevin M. Dinan, Robert W. Fleishman, Bruce L. McLellan, James T. Pahlen, Mark Bradley Peterson, Plunkett Schwartz Peterson, Minneapolis, MN, Monica L. Selter, John D. Shakow, for movants.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to

a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Defendant's Motion to Amend Pretrial Order, Amend its Answer, and Compel Depositions, and upon the Plaintiff's Motion for a Protective Order. A Hearing on the Motion was conducted on May 11, 1999, at which the Plaintiff appeared by Jerry W. Snider, Kara L. Benson, William D. Langford Jr., and Aubrey M. Daniel, III, Esqs.; and the Defendant appeared by Alan L. Kildow, Shand S. Stephens, and Eliot R. Hudson, Esqs. For reasons which follow, the Defendant's Motion to Amend the Pretrial Order is granted in part, its Motions to Amend its Answer and to Compel Depositions are denied, and the Plaintiff's Motion for a Protective Order is granted in part.

## II. *Factual and Procedural Background*

This case arises out of the "great" flood of 1993, which inundated vast areas of the Mississippi River basin. The Plaintiff Archer Daniels Midland Company ("ADM"), whose business is said to have been substantially harmed by the flood's effect upon corn production, barge traffic, and by the other devastating consequences of the deluge, claims that the Defendant Aon Risk Services, Inc. ("Aon") had neglected to secure $50 million, in excess insurance coverage, for ADM's consequent business interruption. More precisely, according to ADM, Aon did not obtain an excess policy from Hartford Fire Insurance Company ("Hartford"), which would have provided "extra expense, contingent business interruption, or contingent extra expense coverage," *Am.Compl.* ¶ 31, which, assertedly, would have indemnified ADM for losses resulting from the interruption of its business operations.

Before this action was filed, ADM sued its several insurers, including Hartford, in order to recover the policy limits under each insurance contract, for the losses which were claimed to have been sustained as a result of the flood. See, *Archer–Daniels–Midland Co. v. Phoenix Assurance Co. ("Phoenix")*, Civ. No. 95–4001(JLF) (S.D.Ill.). There, the District Court dismissed ADM's claims against Hartford, and ADM has taken an appeal to the United States Court of Appeals for the Seventh Circuit, which is still pending.

ADM filed this action on September 25, 1997, and amended its Complaint on March 11, 1998. After receiving the recommendations of the parties as to appropriate pretrial deadlines, the Court issued its Pretrial Schedule on April 28, 1998. Among the deadlines established by that Order, the time for amending a pleading would expire on July 1, 1998, the discovery period was scheduled to conclude on February 1, 1999, and the case was set to be "Ready for Trial" on July 1, 1999. In addition, each party was limited to 20 depositions and 25 interrogatories. On June 1, 1998, Aon filed a Motion to Dismiss the Plaintiff's Complaint for failing to state a claim upon which relief could be granted, and the resultant briefing of that Motion ensued.

During the pendency of Aon's Motion to Dismiss, Aon twice moved to amend the Pretrial Schedule by extending certain of its deadlines. We denied the first Motion, but agreed, on January 25, 1999, to permit an extension of the pretrial deadlines, leaving it to the parties to stipulate, in the first instance, to an Amended Pretrial Order which would incorporate a modest extension in the prescribed pretrial timetable. As it had been stipulated by the parties, and accepted by the Court, discovery is now set to conclude on July 15, 1999, nondispositive Motions are due on October 1, 1999, dispositive Motions must be filed and heard by December 15, 1999, and the case will be "Ready for Trial" on February 1, 2000. Notably, no change in the deadline for amending a pleading was requested, or granted. On February 25, 1999, the District Court denied Aon's Motion to Dismiss and, on March 8, 1999, Aon filed its Answer in this matter.

Candidly admitting that it has only recently given discovery its close attention, Aon requests sweeping modifications to the Pretrial Schedule so as to permit Aon to amend its Answer, in order to assert ten additional affirmative defenses—many of which overlap, and some of which are premised upon allegations that ADM has engaged in price-fixing in violation of State and Federal Antitrust laws. The proposed affirmative defenses include the following: (1) ADM's unclean hands and/or illegal conduct; (2) ADM's

breach of the insurance contract it had with Hartford by not disclosing facts material to Hartford's decision to underwrite the policy; (3) ADM's misrepresentations to Hartford and Aon; (4) the doctrine of impossibility, assertedly because the coverage claimed was not available (presumably because of ADM's alleged price fixing); (5) ADM's negligent failure to inform Aon that it did not agree to the terms of the Hartford policy; (6) waiver; (7) laches; (8) promissory estoppel, equitable estoppel, collateral estoppel, and/or judicial estoppel; (9) comparative negligence; and (10) ripeness—owing to the fact that the dispute between ADM and Hartford has not been finally resolved. *Proposed Am. Answer* ¶ 63–72. In addition, Aon requests that the Pretrial Order be amended so as to extend each of the remaining pretrial deadlines by six months, and in order to allow Aon to complete 75 depositions, and to serve a total of 50 interrogatories. Aon's Motion to Compel relates to the appropriate location for the depositions of ADM's officers, directors, representatives, and employees. Specifically, Aon seeks an Order that would require ADM to present the deponents, who are within ADM's control, to the District of Minnesota for the taking of their depositions.

ADM's Motion for a Protective Order presents, in practical effect, the mirror-image of Aon's demand for relief. Pursuant to Rule 26(c), Federal Rules of Civil Procedure, ADM requests an Order that would bar Aon from inquiring into ADM's alleged violations of the antitrust laws, that would preserve the quantity of depositions, and interrogatories, that were allowed in our Pretrial Order, and that would prevent its directors, officers, and employees, from being deposed anywhere else but Decatur, Illinois. This matter was taken under advisement on May 19, 1999, following the parties' submission of additional letter briefs which were intended to clarify their respective positions on certain of the issues presented.

### III. *Discussion*

A. *Amendment of the Answer and Pretrial Deadlines.* Aon's attempt to amend its Answer, and to extend the existing pretrial deadlines, has been advanced under the governing regime of Rules 15(a), and 16(b), Federal Rules of Civil Procedure, which control the amendment of pleadings and the modification of a Pretrial Scheduling Order. In reality, where, as here, the time for amending the pleadings expired some ten months before the Hearing on the Motion to Amend, both requests should be considered within the framework of Rule 16(b). See, *Luigino's, Inc. v. Pezrow Cos.*, 178 F.R.D. 523, 525 (D.Minn.1998).[1]

1. *Standard of Review.* Rule 16(b), Federal Rules of Civil Procedure, provides that a Scheduling Order "shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." The "good cause" standard is an exacting one, for it demands a demonstration that the existing schedule "cannot reasonably be met despite the diligence of the

1. Aon disputes the timeliness of its Motion to amend its Answer, and our Scheduling Order, and argues that, under Rule 12(a)(3), its Answer was not due until 10 days after the District Court's ruled, on February 25, 1999, on its Motion to Dismiss and, arguing that its Motion to Amend is a nondispositive Motion, Aon notes that it has until October 1, 1999, in which to serve and file such Motions. We can readily accept Aon's first proposition—that its Answer was not due until March of 1999—but we find no merit in its suggestion that the pendency of the Motion to Dismiss afforded an extension in any of the other pretrial deadlines.

This case was not stayed during the pendency of the Motion to Dismiss, and Aon was obligated to either comply with the existing pretrial deadlines, or seek leave to amend them. Indeed, for good cause shown, the Pretrial Schedule was once extended, but the deadline for amending the pleadings was not requested to be altered. As for Aon's second point—that its Motion to Amend should be governed by the nondispositive Motion date—the argument is sophistry. Our initial Pretrial Order set separate dates for the filing of Motions to amend the pleadings, and for any other nondispositive Motions. The deadline relating to Motions to Amend would be nonsensical if such Motions were governed by the more general deadline for nondispositive Motions. Had Aon, or ADM, been interested in a modification of the deadline by which they were required to seek leave to amend their respective pleadings, they could have made that intention known when we previously modified certain of the other pretrial deadlines, upon the parties' proper showing of good cause to do so.

party seeking the extension." *Rule 16(b), Federal Rules of Civil Procedure, Advisory Committee Notes—1983 Amendment;* see also, *Julian v. Equifax Check Services, Inc.,* 178 F.R.D. 10, 16 (D.Conn.1998). It hardly bears mention, therefore, that "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir.1992). Nor does the question of good cause turn on the existence or absence of prejudice to the non-moving party. *Luigino's, Inc. v. Pezrow Cos.,* supra at 525.

In sum, Rule 16(b) assures that "[a] magistrate judge's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Gestetner Corp. v. Case Equip. Co.,* 108 F.R.D. 138, 141 (D.Me.1985). As unwieldy caseloads, and congested Court calendars, continue to plague the practical utility of Federal Court litigation, "[s]cheduling orders have become increasingly critical to the district court's case management responsibilities," *Luigino's, Inc. v. Pezrow Cos.,* supra at 525, and the capacity of such Orders to sensibly advance litigation to the point of Trial must be responsibly preserved. The accessibility of the Courts would have no particular societal benefit if the actions so filed were not able to be timely brought to Trial. This fundamental truth, clearly articulated in Rule 1, Federal Rules of Civil Procedure, underscores the focus of Rule 16(b) on the diligence of the party seeking to modify a Scheduling Order, as opposed to the litany of lame excuses, inclusive of inadvertence and neglect, which commonly undergird an untimely Motion to Amend. See, *Sosa v. Airprint Systems, Inc.,* 133 F.3d 1417, 1418–19 (11th Cir.1998); *Johnson v. Mammoth Recreations,* supra at 609.

2. *Legal Analysis.* With the foregoing as our guide, we consider Aon's proposed modifications of the pretrial deadlines and, since they involve somewhat different considerations, we address Aon's request to amend its Answer separately from its request to alter other deadlines in the current Scheduling Order.

a. *Amendment of the Pleadings.* As a prelude to our consideration of Aon's proffered "good cause," for its failure to incorporate its newly formulated affirmative defenses in its recently filed Answer to ADM's Complaint, we first consider Aon's argument that, contrary to the Rule 16(b) standard, its delay in amending its pleadings should be viewed under an "absence of prejudice to the nonmovant" criterion. Aon urges that, under the liberal amendment standard which is embodied in Rule 15(a), Federal Rules of Civil Procedure, and which counsels that leave to amend should be "freely given," its delay in seeking to amend is not a proper ground to deny such leave so long as no "prejudice" befalls ADM.

Applying the Supreme Court's Rule 15(a) standard, see, *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Eighth Circuit has held, on several occasions, that delay, alone, is an insufficient justification to deny a Motion to Amend, since prejudice to the nonmoving party must also be shown. *Bell v. Allstate Life Ins. Co.,* 160 F.3d 452, 454 (8th Cir.1998); *Buder v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 644 F.2d 690, 694 (8th Cir.1981); *Mercantile Trust Co. Nat'l Ass'n v. Inland Marine Prods. Corp.,* 542 F.2d 1010, 1012 (8th Cir. 1976); *Hanson v. Hunt Oil Co.,* 398 F.2d 578, 582 (8th Cir.1968). None of these decisions refer to Rule 16(b), and all but one were decided before Rule 16 was amended to impose a "good cause" prerequisite to an allowable modification of a Pretrial Scheduling Order.

In *Bell*—the only contemporaneous case—the Court did rely upon the more relaxed Rule 15(a) standard, and applied this standard when the plaintiff filed her Motion four days after the Motion cutoff date, thereby running afoul, at least ostensibly, of Rule 16(b). *Bell v. Allstate Life Ins. Co.,* supra at 454. The Court affirmed the District Court's refusal to allow the amendment because, as here, the amendment would have raised new factual and legal issues, which would necessitate additional discovery. As we have noted, however, the Court did not advert to, let alone address, the provisions of Rule 16(b), which require a showing of "good cause"

before a Motion to Amend may be granted, when that grant would violate a Rule 16 Scheduling Order.

■ While we are properly constrained to adhere to the directives of our Court of Appeals, we conclude that the holding in *Bell* does not control our analysis here. Under venerable authority, a prior decision will not constitute binding precedent as to issues which were not addressed in that decision, but which were passed upon *sub silentio*. See, e.g., *Waters v. Churchill*, 511 U.S. 661, 678, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) ("cases cannot be read as foreclosing arguments they never dealt with."); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 63 n. 4, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("[T]his Court has never considered itself bound [by prior *sub silentio* holdings] when a subsequent case finally brings the *** issue before us.") [citation and internal quotation marks omitted]; *Webster v. Fall*, 266 U.S. 507, 510, 45 S.Ct. 148, 69 L.Ed. 411 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon are not to be considered as having been so decided as to constitute precedents.").

■ This principle carries particular sway where, as here, it would be difficult to conceive that our Court of Appeals would slight the clear language of Rule 16, as well as a body of case authority, which has been embraced by District Courts within this Circuit, and by other Courts of Appeals—at least

without clearly expressing an intent to do so. See, *Sosa v. Airprint Systems, Inc.*, supra at 1419 ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."); see also, *Johnson v. Mammoth Recreations, Inc.*, supra at 609–11; *Riofrio Anda v. Ralston Purina*, 959 F.2d 1149, 1154–55 (1st Cir.1992). Accordingly, while by its literal terms, the Court's decision, in *Bell*, applies the strictures of Rule 15(a), we cannot responsibly read its omission of any Rule 16(b) considerations, as reflecting a judicial evisceration of that Rule's insistence upon a showing of "good cause" if a Motion to Amend would traverse a Scheduling Order of the Court. We do not accept a "failure of advocacy" interpretation of *Bell* facilely, for such an approach would do unmistakable violence to the concept of *stare decisis*. Nevertheless, we cannot attribute to our Court of Appeals a holding whose import—by every appearance—was not drawn to the Court's attention. If an exception to the "good faith" requirement of Rule 16 were to be carved by Rule 15, then we can conceive of no more devastating undercutting of that requirement for, invariably, a Motion to add claims or defenses unalterably ravages any pre-existing Scheduling Order because of the additional discovery, and Motion practice, which such an amendment necessarily evokes. Accordingly, our analysis turns to the "good cause" requirements of Rule 16(b).[2]

---

2. Even applying the indulgence of Rule 15(a), Aon's Motion fails. We can accept, as Aon contends, that Motions to Amend should be allowed, at any time, when the Motion will not prejudice the interests of the opposing party, but we view the harm caused by a belated Motion to Amend to potentiate, almost ineluctably, to the infliction of substantial prejudice when new claims, or defenses, are raised long after the moving party was on notice of that claim, or reasonably should have been aware that such a claim existed. In considering Aon's Motion, solely on the criteria in *Foman*, we are unable to adopt Aon's view that ADM would not be prejudiced by the proposed amendments. All concede that the suggested amendments would broadly expand the issues in the case, would necessitate a significant enlargement in the scope of the parties' current discovery, and would require the duplication of the discovery which the parties have already undertaken. Nevertheless, under our current

Scheduling Order, only about one month of discovery remains available to the parties. Given these circumstances, prejudice to ADM is unavoidable. As we have noted, in *Bell*, the plaintiff sought leave to amend her Complaint four days after the deadline for the filing of such a Motion and, as here, her proposed amendment would have infused different factual and legal issues than those asserted in her original Complaint, and would have required additional discovery, as well as an extension of the existing pre-trial deadlines. In the Court's view, those factors created sufficient prejudice to the non-moving party as would justify the District Court's refusal to grant leave to amend. *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir.1998); see also, *Rouse v. Farmers State Bank*, 866 F.Supp. 1191, (N.D.Iowa 1994) ("Additional discovery and trial preparation which results from late amendment constitutes prejudice of suffi-

■ As noted, in order to show good cause for its request to amend its Answer at this late date, Aon must demonstrate that, despite its exercise of due diligence, it could not have raised these proposed affirmative defenses in a timely manner under the Pretrial Schedule. In this case, it must be shown that Aon had exercised due diligence in developing its defenses to ADM's claims, but that the proposed defenses, which it now seeks to assert, could not have been raised in Aon's first Answer, which was filed only two months ago, on March 8, 1999. If Aon "was not diligent, the inquiry should end." See, *Johnson v. Mammoth Recreations, Inc.*, supra at 609.

Here, our inquiry ends near its beginning, for Aon has shown no diligence in pleading its newly proposed claims, when they either were apparent to Aon, or should have been reasonably apparent. In fact, all of Aon's newly proposed affirmative defenses were available to it from the outset of this litigation, and should have been raised in Aon's Answer. The defenses which are founded upon ADM's failure to timely complain to Aon, that the Hartford policy did not meet ADM's specifications, should have been obvious to Aon, who was uniquely positioned to know when ADM first informed Aon of its dissatisfaction with the policy terms, and when it should have. Aon does not argue otherwise, nor does it offer a reason for its failure to more expeditiously assert the claimed defenses of promissory estoppel, equitable estoppel, collateral estoppel, judicial estoppel, or laches. Aon's attempt, at this late juncture, to raise these defenses, finds no support in a bona fide showing of good cause, and the omission of these defenses appears to be inexplicable if, in fact, the defenses have any importance, and are not mere make-weight. See, *Luigino's, Inc. v. Pezrow Cos.*, supra at 525.

As for those defenses, which are based upon ADM's alleged price fixing activities, Aon offers no explanation for its failure to assert them at an earlier time. ADM has cogently illustrated, through newspaper clippings and various public filings, that its asserted price fixing has garnered public attention for a number of years, and certainly before Aon filed its Answer in this matter. In 1995, the Antitrust Division of the Department of Justice publicly announced that it was investigating possible anticompetitive practices, by ADM, in the marketing of high fructose corn syrup, citric acid, and lysine. In October of 1996, ADM entered a guilty plea to violating the Federal antitrust laws with respect to the citric acid and lysine markets. Additionally, three former ADM executives were convicted of fixing the price of lysine in September of 1998. Meanwhile, a class action has been pending, since at least 1995, in which it is claimed that ADM has conspired to commit anticompetitive activity in the high fructose corn syrup market. See, *In re High Fructose Corn Syrup Litigation,* Master File No. 95–1477 (C.D.Ill.).

Against this backdrop of public notoriety, we find Aon's failure to timely plead defenses which, purportedly, arise from the same publicly disclosed misdeeds, or asserted misdeeds, to be wholly beyond comprehension. In its Memorandum, Aon glosses this point by contending, in conclusory language, that its "investigation and evaluation of ADM's damage claims has raised the possibility that ADM was involved in illegal price-fixing, in violation of state and federal antitrust laws." *Def.'s Mem.* at 1. Notably, Aon does not disclose the existence of any newly obtained, material revelations about ADM's alleged anticompetitive behavior, which would tend to show that Aon previously had no factual basis upon which to premise its newly-framed affirmative defenses. Indeed, in a post-Hearing submission to the Court, Aon's counsel has argued that the "market pricing issues for corn and corn products were always in this case because ADM has made business interruption claims." *Letter from Alan L. Kildow to Court of 5/18/99* at 6. If the assertion is correct, then there is no apparent reason why a reasonably diligent attorney would not have previously inquired into the possibility that—as Aon now claims—ADM's anticompetitive conduct ef-

cient magnitude to deny a motion to amend."). As a consequence, even if our analysis were solely driven by Rule 15(a), we would deny Aon's

Motion because of the prejudice such an amendment would cause to ADM.

fectively voided any insurance coverage that ADM might now claim.

We understand Aon to contend that its interests were not well-served by its previous counsel of Record, but such an argument is a frail reed upon which to support a Motion to Amend that was not timely filed. If the substitution of legal counsel were a competent basis upon which to advance an untimely Motion to Amend, then this Court would be plagued with attorney substitutions for no better reason than to undergird a Motion to Amend either a pleading, or a Scheduling Order. In point of fact, Aon retained legal counsel of its choice, who elected to pursue certain claims and not others, and we are at a loss to understand how dissatisfaction with the elections that counsel of Record has made—not surreptitiously, but plainly and openly—should now warrant the abandonment of a duly promulgated Scheduling Order that was formulated with the input of the parties, as expressed by counsel of Record. Apart from its dissatisfaction with its prior legal counsel—a basis for an amendment we find utterly unavailing—Aon has failed to demonstrate that, through the exercise of diligence, it could not have raised the affirmative defenses, that it now seeks to mount in this proceeding, on a timely basis.

Lastly, we recognize that, under the Federal Rules, Aon was not required to file its Answer until a ruling on its Motion to Dismiss had been issued. Nevertheless, during the one year period, between the filing of ADM's Amended Complaint and Aon's Answer, Aon had an abundance of time to carefully consider and develop its defenses, as the action was not stayed during the pendency of the Motion to Dismiss. If anything, Aon was better positioned to formulate its defenses because of the Motion to Dismiss, as it obtained eight additional months in which to serve and file an Answer which incorporated all of the defenses that were sustainable under the proscriptions of Rule 11, Federal Rules of Civil Procedure. For reasons both unclear, and unstated, Aon did not employ the opportunities presented so as to perfect the claims of its Answer, and avoid its wholly unnecessary, and unsupported, Motion to Amend. Finding no good cause for the Motion, we deny the same as being without merit.

b. *The Amendment of the Remaining Scheduling Order Dates.*

We have a similar dearth of good cause for the second modification which Aon proposes for our Scheduling Order in this matter. Although Aon has engaged a more spirited effort to show good cause for an additional six months of discovery, its showings are critically undercut by one resonating reality—namely, that in the fourteen months that have passed since the Pretrial Conference in this case, Aon has yet to commence a single deposition. In fact, by all appearances, Aon's attorneys have only recently reviewed the seventy boxes of documents, which were obtained from the *Phoenix* litigation, and which have been available for review since July of 1998. With commendable candor, Aon's counsel conceded at the Hearing that, before our previous modification of the Pretrial Schedule, Aon had not conducted discovery with the diligence that is required to defend a case of this magnitude. Following the issuance of our amended Scheduling Order, Aon has conducted a review of the 70 boxes of documents, has served additional Interrogatories and Requests for Production of Documents, and has served a host of deposition notices.

Squarely put, the question before us is whether Aon's enervated interest in discovery, as revealed in the last several months, should erase the fourteen months of nondiscovery which preceded Aon's apparent epiphany. We conclude that it should not. As we stated at the Hearing, to allow newfound, but sadly belated diligence to warrant an extension in the existing deadlines only encourages procrastination by rewarding the indolent for their sloth. While Aon may view the issue as only properly isolated to this case, the failure of a litigant to honor the established pretrial deadlines gravely disturbs the entirety of the Court's calendar, as well as the capacity of the Court to promptly address the concerns of those litigants who do abide by Scheduling Orders and, in a real sense, the integrity of the system of Federal justice.

Nevertheless, we believe that, given the history of this case, and the actual threat that, if not allowed a reasonable opportunity to discover, Aon will be undertaking its discovery in the Trial of this action, a modest extension of the discovery deadline will accommodate the needs of Aon, will serve the interests of justice,[3] and will not affront the purposes of Rule 1, Federal Rules of Civil Procedure. Accordingly, we will extend discovery so that it must be completed **by no later than September 15, 1999,** nondispositive Motions must be served and filed **by no later than October 15, 1999,** dispositive Motions must be filed **by no later than December 15, 1999,** and the case will be deemed "Ready for Trial" **on February 1, 2000,** or 30 days after the Court issues an Order on any then pending dispositive Motion. These extensions effectively provide the parties with an additional two months to complete their discovery without significantly delaying the "Ready for Trial" date. To this extent, we grant Aon's Motion to Amend the Scheduling Order.

**B. *Modification of the Number of Depositions and Interrogatories.***

1. *Standard of Review.* Rules 30(a)(2) and 33(a), Federal Rules of Civil Procedure, presumptively limit the number of depositions that each side may take to ten, and the number of interrogatories, including discrete subparts, that a party may serve to 25. Of course, leave to notice additional depositions, or to serve additional Interrogatories, is governed by the provisions of Rule 26(b)(2), which require the Court to limit discovery if:
   (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

*Rule 26(b)(2), Federal Rules of Civil Procedure.*

■ In practical terms, a party seeking leave to take more depositions, or to serve more Interrogatories, than are contemplated by the Federal Rules or by the Court's Scheduling Order, must make a particularized showing of why the discovery is necessary. See, *Bell v. Fowler,* 99 F.3d 262, 271 (8th Cir.1996) (where plaintiff "presented no good reason why additional depositions were necessary *** [t]he district court committed no abuse of discretion" in denying leave to do so); *Mead Corp. v. Riverwood Natural Resources Corp.,* 145 F.R.D. 512, 518 (D.Minn. 1992) (denying leave to serve additional Interrogatories, where party did not demonstrate necessity by showing the specific content of those Interrogatories); *Capacchione v. Charlotte–Mecklenburg Schools,* 182 F.R.D. 486, 492 (W.D.N.C.1998) (denying leave to serve additional Interrogatories where party gave no explanation of their subject matter); *Whittingham v. Amherst College,* 163 F.R.D. 170, 171 (D.Mass.1995) (Federal Rules require party to make specific showing of necessity, and to first exhaust available discovery before seeking leave of Court for supplemental discovery).

2. *Legal Analysis.* Our consideration of this aspect of Aon's Motion is decidedly influenced by the fact that ADM has produced, for Aon's review, all of the discovery, inclusive of deposition transcripts, which was

---

**3.** Any appearance of tension, between our finding of sufficient cause to warrant an extension of the discovery deadline, and our rejection of Aon's Motion to Amend for want of "good cause," should be dispelled by the recognition that cause for any relief is relative—the more disruptive the requested relief, the greater the need for comparable cause. Here, we can allow Aon a modest extension, in which to complete its critical discovery, without revamping the entirety of our Pretrial Schedule, and we find adequate cause to do so. Even veteran Trial practitioners can underestimate the quantum of discovery that will be required by a given legal issue, and we conclude that Aon's former counsel of Record may have miscalculated the time that will be needed to properly address ADM's damage claim. We do not agree, however, with Aon's projection that an additional six months of discovery is either necessary or appropriate.

amassed in the *Phoenix* litigation, and which involved issues which overlap certain of those presented here. Cf., *Rule 26(b)(2)(i–ii), Federal Rules of Civil Procedure.* Of course, the existence of this wealth of discovery should not preclude Aon's opportunity to depose witnesses, who were deposed in *Phoenix,* as Aon has an understandable interest in questioning certain of those witnesses with specific focus on the claims that ADM has asserted in support of its claim that Aon committed malpractice. The burden imposed by such focused discovery should be minimal. Accordingly, we deny that portion of ADM's Motion for a Protective Order, which seeks to prevent Aon from deposing anyone who was deposed in the *Phoenix* case.

Overriding the limits of 20 depositions, and 25 Interrogatories, which were established by our Pretrial Order, however, is another matter. Aon has yet to take any depositions in this case, and it advises that it has not exhausted the 25 Interrogatories that were earlier afforded to it. We have no cause, here, to presume that those limits are critically insufficient or, if they are, how many more Interrogatories, and depositions, should suffice—given the issues properly open to inquiry in this matter. On the Record presented, Aon has not demonstrated any need for a more expansive allowance of Interrogatories, or depositions. Although Aon has identified 47 proposed deponents, and has broadly stated the supposed relevance of their testimony, it has made no showing that each of the deponents is essential to its discovery, and is not merely a replication of discovery that could be best accomplished with the number of deponents we previously allocated. At a minimum, Aon should appropriately exhaust its current quota of depositions, in order to make an informed request for an opportunity to depose more witnesses, before seeking leave to depose a legion of others. See, *Bell v. Fowler,* supra at 271; *Whittingham v. Amherst College,* supra at 171. By specifically limiting

the number of depositions, the drafters of Rule 30 clearly did not contemplate that depositions should either be unlimited in quantity, or be available without a showing of need. The same may be said of Aon's request for additional Interrogatories, as the request is bereft of any showing that specific Interrogatories are required if Aon is to properly defend itself against ADM's claims. See, *Mead Corp. v. Riverwood Natural Resources Corp.,* supra at 518; *Capacchione v. Charlotte–Mecklenburg Schools,* supra at 492. In the absence of a showing of need, this aspect of Aon's Motion to Amend the Scheduling Order is denied.[4]

C. *The Venue for the Depositions of ADM's Directors, Officers, and Employees.*

Aon contends, with general support in the law, that ADM should be required to produce, for deposition purposes, its witnesses—and, particularly, its directors, officers and employees—in the District of Minnesota, where ADM has chosen to prosecute its claims against Aon. As a threshold matter, a distinction should be drawn between ADM's ordinary employees, and its directors, officers, and other high-level representatives. "Except where the employee has been designated by the corporation under Rule 30(b)(6)," or is an officer, director, or managing agent, "an employee is treated in the same way as any other witness," and "[h]is or her presence must be obtained by subpoena rather than notice ***." Wright, Miller & Marcus, 8A *Federal Practice & Procedure: Civil 2d § 2103,* pp. 36–37. Thus, ordinary employees are subject to the general rule that a deponent should be deposed near his or her residence, or principal place of work. See, e.g., *Metrex Research Corp. v. United States,* 151 F.R.D. 122, 125 (D.Colo.1993); see also, *Rule 45(c)(3)(A)(ii), Federal Rules of Civil Procedure* (directing Court to quash or modify subpoena if it "requires a person who is not a party or an

4. Aon's counsel represented, at the time of the Hearing, that some of the depositions, that it has proposed, are in lieu of the witness's in-Court testimony. We stated our view then, which we reiterate here, that Trial depositions are not governed by the limits set forth in our Pretrial Order, but any effort to conduct discovery, under the guise of taking "in lieu testimony," will not be condoned, and will be appropriately sanctioned. On this Record, we are unable to determine which depositions are intended for Trial purposes.

officer of a party to travel more than 100 miles from the place where that person resides, is employed or regularly transacts business in person"). ADM's obligation to produce certain of managing agents for depositions in this District, does not trump the right of its lower level employees to insist on being deposed in the State of their residence, or their principal place of employment.

■ As to ADM's officers, directors, managing agents, and Rule 30(b)(6) designees, there is a well-recognized, general rule that a plaintiff is required to make itself available for a deposition in the District in which the suit was commenced, because the plaintiff has chosen the forum voluntarily, and should expect to appear there for any legal proceedings, whereas the defendant, ordinarily, has had no choice in selecting the action's venue. See, e.g., *General Houses v. Marloch Manufacturing Corp.*, 239 F.2d 510, 514 (2nd Cir.1956); *Gibbs v. National R.R. Passenger Corp.*, 170 F.R.D. 452, 453 (N.D.Ind.1997); *South Seas Catamaran, Inc. v. Motor Vessel Leeway*, 120 F.R.D. 17, 21 (D.N.J.1988), aff'd, 993 F.2d 878 (3rd Cir. 1993).

■ At best, however, this is a general rule which is subject to exception, when the plaintiff can make a compelling showing that its application would impose an unduly heavy burden, or that the overall efficiency of the discovery process would be better served by deposing the plaintiff, and its agents, outside of the forum District. See, *Federal Practice & Procedure: Civil 2d § 2112* at 77–81, and cases cited therein. In the final analysis, our selection of the forum for a plaintiff's deposition should not be rigidly formulaic for, in the interests of justice, we have "great discretion in designating the location of taking a deposition," *Thompson v. Sun Oil Co.*, 523 F.2d 647, 648 (8th Cir.1975), and that discretion must be directed toward "consider[ing] each case on its own facts and the equities of the particular situation." *Turner v. Prudential Ins. Co. of America*, 119 F.R.D. 381, 383 (M.D.N.C.1988), citing *Leist v. Union Oil Co.*, 82 F.R.D. 203 (E.D.Wis.1979).

■ ADM has demonstrated, we think persuasively, that the equities require that the exception, and not the general rule, govern the place where its corporate directors, officers, and Rule 30(b)(6) designees, should be taken. Apparently, that location is Decatur, Illinois, where the bulk of these corporate representatives work and reside. Conducting the depositions in a common location, such as Decatur, would minimize the logistical difficulties, and the expense of all concerned, which would be caused by taking these depositions in a variety of distant forums; would minimize the wasted time of the deponents, as they await the taking of their depositions; and would permit the depositions to proceed, on after the other, with the least amount of nonproductive time for the deposing attorneys. If a deponent completes his testimony ahead of schedule, or behind, it is far less cumbersome to correspondingly advance, or defer, the commencement of the next deposition, without altering the interstate itineraries of the attorneys and the other deponents.

If ADM's party-deponents were scattered throughout the country, we would be persuaded that conducting their depositions in Minnesota, or some other central, convenient location would be the preferred course. The parties have indicated, however, that all of these deponents reside in the vicinity of Decatur, and can be readily produced, by ADM, in Decatur. As a consequence, we deny this aspect of Aon's Motion to Compel, and grant ADM's Motion for a Protective Order. If specific problems arise, the parties can draw them to the Court's attention, but the venue of the depositions of ADM's directors, officers, and Rule 30(b)(6) designees, shall be in Decatur, Illinois, absent further Order of the Court.

D. *Antitrust Discovery.* What remains for resolution is that portion of ADM's Motion for a Protective Order which seeks to preclude Aon from inquiring, during the course of discovery, into ADM's claimed violation of State and Federal antitrust laws. Our denial of ADM's Motion to Amend its Answer, in order to raise affirmative defenses that are based upon alleged antitrust violations, does not, by itself, foreclose the relevance of such discovery. Aon argues that ADM's purportedly illegal manipulation of

the market price of its products is inextricably intertwined in ADM's calculation of damages, thereby opening those issues for needed discovery—a proposition that ADM vehemently denies.

■ 1. *Standard of Review.* The threshold requirement of discoverability is whether the information sought is "relevant to the subject matter involved in the pending action." *Shelton v. American Motors,* 805 F.2d 1323, 1326 (8th Cir.1986). Of course, to be discoverable, the information "need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Rule 26(b)(1), Federal Rules of Civil Procedure.* The standard, therefore, is widely recognized as one that is necessarily broad in its scope, in order to allow the parties essentially equal access to the operative facts. See, *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 382 (8th Cir.1992); *Leighr v. Beverly Enterprises–Kansas, Inc.,* 164 F.R.D. 550 (D.Kan. 1996); *Cox v. E.I. Du Pont de Nemours & Co.,* 38 F.R.D. 396, 398 (D.S.C.1965). Notwithstanding the liberality of discovery, however, it is not without bounds. As our Court of Appeals has observed:

> [T]his often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.

*Hofer v. Mack Trucks,* supra at 380.

Therefore, despite the liberality of discovery, "we will remain reluctant to allow any party to 'roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" *Onwuka v. Federal Express Corp.,* 178 F.R.D. 508, 516 (D.Minn.1997); *Carlson Cos., Inc. v. Sperry & Hutchinson Co.,* 374 F.Supp. 1080, 1089 (D.Minn.1974); see also, *Blum v. Schlegel,* 150 F.R.D. 38, 39 (W.D.N.Y.1993).

■ Even when dealing with requests for relevant information, the Rules recognize that discovery may be limited when the benefits to be obtained are outweighed by the burdens and expenses involved. According to Rule 26(b)(2), Federal Rules of Civil Procedure, we are directed to limit discovery upon a determination that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issue at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

These considerations are not talismanic. Rather, they are to he applied in a common sense, and practical manner. See, *In re Convergent Tech. Securities Litigation,* 108 F.R.D. 328, 331 (D.Cal.1985).

2. *Legal Analysis.* We approach this issue with decided trepidation, as the issues have been poorly framed, the parties' efforts to clarify their contentions have not been fully enlightening, and their proposals are at the polar ends of a broad spectrum. In addition, there has been a distinct tendency, by both sides, to argue in the abstract, and to formulate their arguments on the semantical niceties of insurance coverage jargon. Aon advises that it cannot be expected to provide a fully definitive specification as to the relevance of ADM's unlawful, anticompetitive activities, competitive activities, since it has not yet explored the depths of its suspicions as to ADM's illicit pricing conduct. ADM maintains, with passing persuasiveness, that it is not seeking damages for loss of income, but only for the increased costs, and expenses, that were incurred in securing alternative raw materials for those which were destroyed in the 1993 flood. If true, we cannot fathom how any alleged price fixing, by ADM, as to the market value of its manufactured goods, could impact upon the price that ADM was required to pay, to independent

producers of raw source materials, in order to replace those lost in the flood.

On the other hand, if Aon has accurately represented that ADM is, in fact, claiming lost profits as to goods, which were the subject of admitted price fixing, or which are responsibly the subject of such claims, then ADM's computation of damages would necessarily implicate the discovery that Aon requests. Unfortunately, the sparsity of an informative Record hampers our ability to resolve this issue on any particularized basis. We are satisfied that a mechanism is required to "gatekeep" the prospect of whether, or to what extent, the parties' discovery should traipse into the potentially bottomless pit of antitrust price fixing.

As a consequence, we neither grant, nor deny, this aspect of ADM's Motion for a Protective Order, but we instruct Aon that, if it intends to inquire into this subject area, it must first present a cogent showing that ADM is claiming specific categories of damages, which are generated by admitted price fixing activities, or which are necessarily impacted by unlawful competitive practices as informed by generally accepted accounting practices, or by accepted principles of economic theory. We think that, of necessity, such a showing will require the taking of a Rule 30(b)(6) deposition specifically related to ADM's computation of damages, and to the impact, if any, that alleged price fixing either has had, or would properly have, upon that computation. If a plausible showing of relevance can be made, then continued discovery in that field of inquiry would appear to be indisputable.

At its core, this is a malpractice action, and not an anti-trust proceeding. An unrestricted exploration of claimed price fixing, as urged by Aon, would hopelessly inter the action in interminable, and extremely expensive, discovery. We are not prepared to allow this fairly straightforward action to be wrenched into the serpentine labyrinth frequented by complex litigation without a convincing showing that such a course is appropriate. Such a showing has not been made, nor could we expect such a showing without the preliminary inquiry that we have formulated.[5] Given this late stage in the discovery process, we reiterate that discovery should be both narrow, and focused, but we are obligated, by circumstances beyond our control, to leave the specific dimensions of discovery for further factual development.

NOW, THEREFORE, It is—

ORDERED:

1. That the Defendant's Motion to Amend the Pretrial Order [Docket No. 68, pt. 1] is GRANTED, in part, and our Pretrial Order is amended to provide that all discovery shall be completed **by no later than September 15, 1999,** that all nondispositive Motions shall be filed **by no later than October 15, 1999,** that all dispositive Motions shall be filed **by no later than December 15, 1999,** and that the case shall be "Ready for Trial" **on February 1, 2000,** or 30 days after the Court issues an Order on any then pending dispositive Motion.

2. That the Defendant's Motion to Amend its Answer [Docket No. 68, pt. 2] is DENIED.

3. That the Defendant's Motion to Compel Depositions [Docket No. 68, pt. 3] is DENIED.

4. That the Plaintiff's Motion for a Protective Order [Docket No. 73] is GRANTED in part, as more fully detailed in the text of this Order.

---

**5.** As but one example, Aon suggests that ADM claims losses because ADM sought to funnel certain of its raw materials into areas which generated abnormal profits as a result of unlawful antitrust activities. Unfortunately, we have not been presented with any demonstration that specific items of ADM's claimed damages reflect such business practices by ADM. Upon such a showing, Aon is at liberty to raise the issue again.