**Mary L. CARTA, as the Administratrix of the Estate of George P. Carta, Plaintiff,**

**v.**

**LUMBERMENS MUTUAL CASUALTY COMPANY, American Motorists Insurance Company, American Manufacturers Mutual Insurance Company, American Protection Insurance Company, Anthem Casualty Insurance Company, Shelby Casualty Insurance Company, Defendants.**

**No. CIV.A.03–12237 NG.**

United States District Court, D. Massachusetts.

March 13, 2006.

---

Richard E. Brody, Deidre Brennan Regan, Brody, Hardoon, Perkins & Kesten LLP, Boston, MA, Tom E. Ellis, Law Offices of Tom E. Ellis LLC, Birmingham, AL, for Anthem Casualty Insurance Company, Shelby Casualty Insurance Company, Defendants.

Nicole A. Colby, Edward P. Leibensperger, McDermott, Will & Emery, Boston, MA, for The Shelby Insurance Company, Vesta Insurance Corporation, Vesta Insurance Group, Inc., Defendants.

Richard A. Davidson, Jr., Michael B. Flynn, Flynn & Associates, PC, Quincy, MA, for Mary L. Carta, Plaintiff.

Robert P. LaHait, Fitzhugh, Parker & Alvaro LLP, Boston, for Kemper Insurance Companies, Kemper National Insurance Company, American Manufacturers Mutual Insurance Company, American Motorists Insurance Company, American Protection Insurance Company, Lumbermens Mutual Casualty Company, Defendants.

Timothy W. Mungovan, Gregg A. Rubenstein, Nixon Peabody LLP, Boston, MA, for McDonald's Corporation, McDonald's Restaurants of Massachusetts, Inc., Defendants.

### *MEMORANDUM AND OPINION ON JOINT MOTION TO DISQUALIFY COUNSEL FOR PLAINTIFF BY THE DEFENDANTS (# 56)*

COLLINGS, United States Magistrate Judge.

### *I. INTRODUCTION*

The plaintiff, Mary L. Carta, as the Administratrix of the Estate of George P. Carta ("Carta" or the "plaintiff"), has sued defendants Lumbermens Mutual Casualty Company, American Motorists Insurance Company, American Manufacturers Mutual Insurance Company and American Protection Insurance Company (hereinafter collectively referred to as "AMPICO") and defendants Anthem Casualty Insurance Company and Shelby Casualty Insurance

Company (hereinafter collectively referred to as "Shelby/Anthem")[1] alleging *inter alia* unfair and deceptive practices in violation of Mass. Gen. L. c. 93A and c. 176D. Specifically, the plaintiff contends that the defendants committed such unfair practices during the claims handling and litigation of a tort action (the "underlying action") filed by her and her husband, George P. Carta ("Mr.Carta"), against various entities as a result of injuries Mr. Carta suffered after falling in a construction ditch outside a McDonald's restaurant. (*See generally* Complaint # 1 and Amended Complaint # 49–2) Some of the original defendants have been dismissed out of the case, and the others have filed answers to the Complaint and/or the Amended Complaint. (*See* Memorandum and Order of 2/28/04, Memorandum and Order # 35, Answers ## 38, 39, 52, 54).

On November 2, 2005, AMPICO and Shelby/Anthem moved to disqualify the plaintiff's attorneys, Michael Flynn ("Flynn") and Richard Davidson ("Davidson")(collectively, the "attorneys"), on the grounds that "they are essential witnesses to the issues in dispute and that it is inappropriate that they serve the role of advocate and witness in this matter." (Joint Motion to Disqualify Counsel for Plaintiff by the Defendants # 56 at 2)

In response to the motion to disqualify, on December 7, 2005, the plaintiff filed an Opposition to Defendants' Joint Motion to Disqualify Counsel (# 61). And, on February 24, 2006, the Court held a hearing on the motion to disqualify. With the issue having been fully briefed and argued by the parties, the motion to disqualify is now in a posture for resolution. For the reasons discussed below, the motion to disqualify shall be allowed.[2]

## II. RELEVANT FACTS

For purposes of ruling on the instant motion, the Court will summarize the facts and include only those that are necessary for resolution of the disqualification issue.[3]

The underlying action arose when Mr. Carta, the plaintiff's decedent, was seriously injured when he fell in construction ditch which had been created by B.R.E. Corporation ("BRE"), a contractor hired by McDonald's Restaurants of Massachusetts ("McDonald's"). (# 61 at 2) BRE was insured by defendants Anthem Casualty Insurance Company and/or Shelby Casualty Insurance Company, and McDonald's was insured by defendants Lumbermens Mutual Casualty Insurance Company, American Motorists Insurance Company, American Manufacturers Mutual Insurance Company and/or American Protection Insurance Company. (# 61 at 2, n. 2 and n. 3)

Mr. Carta suffered serious injuries and incurred substantial damages as a result of his fall. (# 61 at 2) According to the plaintiff, at no time prior to the filing of the underlying action in 1995 did the defendants make an offer of settlement despite demands being made and despite the fact that liability was reasonably clear. (# 61 at 2) Ultimately, just before trial and five years after the underlying action was filed,

---

1. All of the defendants together shall be referred to as the "defendants."

2. The District Judge to whom this case is assigned has referred this matter to the undersigned for a decision pursuant to 28 U.S.C. § 636(c). (Order of Reference # 62) As explained below, the motion shall be allowed but shall not take effect until after the Defendants' Motion for Summary Judgment, which was filed on December 6, 2005, has been decided.

3. Oftentimes, the facts will be quoted verbatim from the parties' pleadings.

McDonald's and BRE made their first settlement offer. (# 61 at 2)

The underlying action ultimately went to trial in late 2000, and the jury returned a verdict in favor of the plaintiff's decedent in the amount of $700,000 in which it found McDonald's 60% negligent, BRE 30% negligent and Mr. Carta 10% negligent. (# 61 at 2) The verdict was reduced by Mr. Carta's negligence to $630,000. (# 61 at 2–3) At the time of entry of the verdict, the defendants had already withdrawn their previous joint settlement offer of $50,000. (# 61 at 3) After judgment was entered, the defendants filed several post-trial motions and appeals, all of which were denied. (# 61 at 3)

On November 6, 2001, the defendants agreed to pay the full amount of the judgment with interest ($1,183,097.80). (# 61 at 3) Mr. Carta accepted the terms of the payment of the judgment but set forth that acceptance of the payment of the judgment would not affect his unfair settlement claims. (# 61 at 3) The terms of that understanding were put in a letter to the defendants, but, unfortunately, Mr. Carta died on November 7, 2001. (# 61 at 3)

On December 19, 2001, the plaintiff was appointed as the Administratrix of the Estate of George P. Carta. (# 61 at 3) On December 20, 2001, the plaintiff sent correspondence to McDonald's and BRE reiterating the acceptance of the understanding reached on November 6, 2001. (# 61 at 3) Thereafter, both McDonald's and BRE withdrew their offer to pay the judgment in its entirety. (# 61 at 3–4) On December 24, 2001, the defendants made a new joint settlement offer in the sum of $700,000 and required that the plaintiff settle and release all claims, including the unfair settlement practice claims. (# 61 at 4) Demand letters, pursuant to Mass. Gen. L. c. 176D and 93A, were sent to each defendant detailing the purported violations of law for which the defendants were responsible. (# 61 at 4)

On November 12, 2003, McDonald's agreed to settle with the plaintiff for an amount less than the full judgment in the underlying action. (# 61 at 4) On January 11, 2004, after BRE lost its appeal before the Appeals Court and while its Application for Leave for Further Appellate Review was pending before the Supreme Judicial Court, BRE agreed to pay the plaintiff the full amount of the judgment including post-judgment interest, minus the settlement amount paid by McDonald's. (# 61 at 4)

## II.  ANALYSIS

The grounds of the instant motion lie in the purported conflict of having the attorneys act as counsel to the plaintiff while at the same time being necessary witnesses in the lawsuit. AMPICO and Shelby/Anthem assert that such a situation violates Rule 3.7 of the Massachusetts Rules of Professional Conduct. Therefore, it is necessary first to set out specifically what that rule provides.

### Rule 3.7  Lawyer as Witness

(a) A lawyer shall not act as advocate at trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work a substantial hardship on the client.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

The comments to Rule 3.7 elucidate its purpose.

■ Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client.

■ The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or an analysis of the proof.

Comments 1 and 2 to Rule 3.7. *See also Culebras Enterprises Corp. v. Rivera-Rios*, 846 F.2d 94, 99 (1st Cir.1988)("The ABA official comment to Rule 3.7 emphasizes that what the rule tries to prevent is a situation where a witness at trial is also the trial lawyer.").

AMPICO and Shelby/Anthem assert that several allegations in the complaint (e.g., that AMPICO and Shelby/Anthem failed to negotiate the settlement of the underlying action in good faith) "are bottomed on communications that could only be proven by the plaintiff attorney's testimony, and [their] credibility concerning said communications will be directly in issue." (# 56 at 5) In other words, the plaintiff's counsel must be disqualified because they will most certainly be witnesses at a trial of this case because they are the "only possible witnesses" on the plaintiff's side to certain facts underlying allegations made by the plaintiff. (# 56 at 5) Most of the negotiations in this matter were, not surprisingly, conducted by and between the plaintiff's counsel and the defendants; thus, the attorneys will be the sole source

of many factual allegations and therefore must be disqualified pursuant to Rule 3.7. (# 56 at 5–6)

The plaintiff counters that the motion to disqualify is premature, contains no factual basis, is being used as a tactical weapon and if granted would work a substantial hardship. (# 61 at 5, 8–9) The plaintiff argues that since she lives in New York, has no ties to Massachusetts and works full-time, it would be difficult for her to find successor counsel. Moreover, says the plaintiff, for another attorney to "get up to speed" on the facts underlying this action "would be staggering" given the "sheer volume" of the records. (# 61 at 9) Additionally, the plaintiff's counsel during the hearing on this matter explained that he could prove his case relying only upon defense witnesses. That is, it is his position that neither he himself nor his co-counsel would ever have to be witnesses because all of the evidence he needs to support the plaintiff's case could come in through witnesses for the defense.[4]

## A. The Massachusetts Rules of Professional Conduct

Decision on the instant motion is controlled by the Massachusetts Rules of Professional Conduct which the District of Massachusetts has adopted per Local Rule 83.6(4)(B) (incorporating by reference "those canons and rules adopted by the Supreme Judicial Court of Massachusetts, embodied in Rules 3:05, 3:07 and 3:08 of said court", . . . ). As mentioned above, the moving parties contend that Rule 3.7 requires disqualification of the attorneys.

## B. The Suspicion Associated with Motions to Disqualify

■ The SJC has emphasized that " '[d]isqualification, as a prophylactic de-

---

**4.** Notably, however, the plaintiff's counsel did concede at the hearing that if he or his co-

counsel was required to be a witness, then they certainly would have to be disqualified.

vice for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Adoption of Erica,* 426 Mass. 55, 58, 686 N.E.2d 967, 970 (1997) (quoting *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 721 (7 Cir., 1982)). That court has also warned of the misuse of such motions by parties seeking to harass their opposition. *See Adoption of Erica,* 426 Mass. at 64, 686 N.E.2d at 974 ("We have noted our concern about the high cost to litigants and to the court system occasioned by motions to disqualify attorneys, especially when such motions are used as harassment and dilatory tactics."). Thus, it is clear that disqualification should be allowed only when "absolutely necessary."

### C. Rule 3.7

■ AMPICO and Shelby/Anthem assert that having the attorneys act as counsel to the plaintiff violates Rule 3.7 because they will definitely be necessary witnesses. "The party moving for disqualification of a lawyer under Rule 3.7 has the burden of showing that the lawyer 'is likely to be a necessary witness' by demonstrating that the lawyer's testimony is relevant to disputed, material questions of fact and that there is no other evidence available to prove those facts." *Clough v. Richelo,* 274 Ga.App. 129, 132, 616 S.E.2d 888, 891 (Ga.App., 2005)(interpreting Georgia Rule 3.7(a) which is identical to Massachusetts Rule 3.7) (citations omitted).

In *Clough,* the court explained that there was an insufficient basis automatically to disqualify appellant's counsel because appellee's "claim that he needs [appellant's counsel's] testimony to support his defense is based upon his mere speculation as to what that testimony might entail...." and "[f]urther, until [appellee] deposes [appel-

lant's counsel], [appellee] is unable to show that there is any disputed material fact that can only be proved with [appellant's counsel's] testimony." *Clough,* 274 Ga. App. at 135–36, 616 S.E.2d at 894; *see also Paretti v. Cavalier Label Co., Inc.,* 722 F.Supp. 985, 986 (S.D.N.Y., 1989) (citations omitted)("A finding of necessity takes into account such factors as the significance of the matters, weight of the testimony, and availability of other evidence."); *Bank v. Thermo Jarrell Ash Corp.,* 15 Mass. L. Rptr. 156, 2002 WL 31188441, *1 (Mass.Super., Aug.9, 2002)(noting that the Rule 3.7 issue "is not solved...by electing not to call the attorney as a witness, if the client is thereby deprived of evidence that cannot be presented by some other means"); *LeaseAmerica Corp. v. Stewart,* 19 Kan.App.2d 740, 753, 876 P.2d 184, 193 (Kan.App.1994)(reversing trial court's order disqualifying defendant's counsel because plaintiff failed to show that attorney's "testimony is necessary, that it would be material to the issues to be resolved, that the evidence could not be obtained elsewhere, or that it would be potentially prejudicial to" the client).

■ In the instant case, AMPICO and Shelby/Anthem have sustained their burden of establishing that the plaintiff's counsel will be necessary witnesses. "A lawyer is likely to be a necessary witness where the proposed testimony is relevant, material, not merely cumulative, and unobtainable elsewhere." *Merrill Lynch Business Financial Svcs., Inc. v. Nudell,* 239 F.Supp.2d 1170, 1173 (D.Colo., 2003)(citing *World Youth Day, Inc. v. Famous Artists Merchandising Exch., Inc.,* 866 F.Supp. 1297, 1302 (D.Colo., 1994)). The proposed testimony of the plaintiff's lawyers is certainly relevant and material-indeed, her two attorneys are the only people who will be able to testify on the plaintiff's behalf about the settlement negotiations with the

defendants, the correspondence that went back and forth between the parties, the meetings that were had between the plaintiff's counsel and defense counsel and the strategic decisions made during the settlement process. Even the plaintiff herself likely would not be able to testify about such matters since they were undertaken by the attorneys themselves, not by the plaintiff, and they involve technical legal nuances that the plaintiff herself probably would not understand.[5]

The plaintiff's counsel during the hearing, however, argued that he would be able to rely solely on defense witnesses to prove the plaintiff's case. His position is that the defense witnesses that he would use are reasonable, honest people who would not deny having a memory of the events in question. However, as the defendants' counsel aptly pointed out, the issue is not that the defense witnesses would deny having a memory of the relevant events; the issue is that the defense witnesses would likely have a very different memory of the events than the plaintiff's counsel's memory. For example, one hotly contested point in this lawsuit is whether the defendants' counsel made a settlement offer which they subsequently withdrew. The plaintiff's position is that they did indeed make an offer and then took it back whereas the defendants' stance is that they never made such an offer. Clearly, and as one of defense counsel explained, the defense witnesses will testify to the effect that there was no settlement offer ever on the table. Thus, to counter the defense witnesses' testimony, the plaintiff's counsel himself would have to testify in order to establish that the defendants' counsel did indeed make a settlement offer which was later withdrawn.

In sum, without the testimony of the plaintiff's lawyers, there would be no one who could testify about the factual "backbone" of the case-i.e., the circumstances underlying the defendants' purportedly unfair settlement practices. In a factually similar case (decided under the Code of Professional Responsibility, rather than the Rules of Professional Conduct), the court disqualified an attorney who was also going to be a witness, explaining that:

> [he] had personal knowledge regarding the alleged acts of bad-faith claims handling. He was an active participant in dealings and negotiations beginning shortly after the fire and continuing up to the time the lawsuit was filed. He testified to conversations and actions taken by the insurance company. Thus, his testimony was necessary to prove his client's claims.

*155 N. High, Ltd. v. Cincinnati Ins. Co.,* 72 Ohio St.3d 423, 428, 650 N.E.2d 869, 872–73 (Ohio, 1995); *see also American Hosp. Supply Corp. v. Roy Lapidus, Inc.,* 493 F.Supp. 1076, 1078 (D.Mass., 1980)(disqualifying attorney "because of his active role in the sale which is the subject matter of this litigation" and because he "has sufficient personal knowledge of material facts [such] that he ought to be called as a witness.").

Like the lawyers in the two cases cited above, the plaintiff's attorneys in the instant case were actively involved in the negotiations underlying this lawsuit, can testify to facts about which no one else can testify and have personal knowledge of matters that will be necessary to prove the plaintiff's claims. Thus, there is a solid

---

5. That is not to suggest that the plaintiff did not take part in decision-making about her case, but it is highly likely and not unusual that the lawyers were the ones intimately involved in the day-to-day machinations of the case, especially during settlement negotiations.

basis for holding that they will be necessary witnesses and as such must be disqualified from acting as counsel to the plaintiff. As discussed above, even if there are defense witnesses who could testify about the same facts and circumstances that the plaintiff's counsel could testify about, their version of events is likely to be very different from that of plaintiff's counsel. Thus, the plaintiff could not depend on the defense witnesses to support her case, and the only logical witnesses for the plaintiff will be her counsel.

■ The proposed testimony of the plaintiff's counsel is not only material and relevant, it is also not cumulative and is unobtainable elsewhere. As mentioned above, there is no one else who could testify to the matters about which the plaintiff's counsel will be able to testify. Indeed, without the testimony from the plaintiff's attorneys, it is hard to see how the plaintiff's case could even go forward. The attorneys are crucial witnesses who will be able to offer testimony which will make or break the plaintiff's case. No one else is in that unique position, not even the plaintiff herself. In short, it is clear that the plaintiff's lawyers are necessary witnesses, as that term is understood in Rule 3.7. *See, e.g., Verizon Yellow Pages Co. v. Sims & Sims, P.C.*, 15 Mass. L. Rptr. 734, 2003 WL 836087, *3–4 (Mass.Super., Feb.24, 2003)(holding that defendant's counsel should be disqualified under Rule 3.7 because plaintiff "established a funda-

mental basis for disqualification" by proving that counsel was a "necessary witness.").

■ Another of the plaintiff's arguments is that the motion should not be allowed because disqualification will work a substantial hardship on her.[6] Specifically, says the plaintiff, she works full-time, lives out of state and has contacted two other firms which have declined to take her case. Moreover, the plaintiff asserts that since this case has spanned twelve years, for successor counsel to get up to speed on the case would be a "staggering" undertaking. (# 61 at 9) Unfortunately for the plaintiff, she has not shown that the substantial hardship exception to Rule 3.7 applies to her case.

The substantial hardship exception to Rule 3.7 is construed narrowly. Accordingly, the "expense and possible delay inherent in any disqualification of counsel" without more, do not qualify as substantial hardship, *Estate of Andrews v. U.S.*, 804 F.Supp. 820, 829 (E.D.Va., 1992) (citations omitted). To find "substantial hardship," courts have required something beyond the normal incidents of changing counsel, such as the loss of extensive knowledge of a case based upon a long-term relationship between the client and counsel and substantial discovery conducted in the actual litigation. *See Lumbard v. Maglia, [Inc.,]* 621 F.Supp. 1529, 1540 (S.D.N.Y., 1985).

---

6. The plaintiff also argues that the motion to disqualify is premature because depositions have not yet taken place. Waiting until after discovery has taken place, however, would not change the outcome of whether or not to disqualify the attorneys. The circumstances will be the same-that the attorneys are the only ones who can testify about most of the factual underpinnings of the case. During the hearing, the plaintiff's counsel cited to one case, *Miller Elec. Co. v. Devine Lighting Co.*, 421 F.Supp. 1020 (W.D.Pa., 1976), in which the court did hold off on disqualifying counsel in favor of letting some discovery proceed. However, in that case, the Disciplinary Rules, not the Code, were in effect such that a different standard applied. Moreover, in that case, the court stated that it believed that "additional information [might] remove the doubt." 421 F.Supp. at 1023. Here, the Court does not find that the circumstances are so uncertain that it would make sense for discovery to go forward.

**32**

*Brown v. Daniel,* 180 F.R.D. 298, 302 (D.S.C., 1998); *see also 155 N. High,* 72 Ohio St.3d at 430, 650 N.E.2d at 874 (disqualifying counsel in part because attorney "did nothing to prove that he had expertise in specialized area of law" and because "civil action was neither particularly complex nor involved.").

There may be some expense and delay involved in obtaining successor counsel, but the plaintiff has not demonstrated that any substantial hardship will occur if the disqualification motion is allowed. While this case may have spanned twelve years, at its root, the case was a simple personal injury case and now is a relatively straightforward unfair settlement practices case. A lawyer taking over this case would not need any specialized or unique knowledge, and the plaintiff has not shown that her current counsel possess any such specialized knowledge. Moreover, the fact that the plaintiff has contacted two other law firms who have declined to take her case does little toward proving substantial hardship. *See Amos v. Cohen,* 156 Ohio App.3d 492, 498, 806 N.E.2d 1014, 1018 (Ohio App., 2004)(allowing disqualification motion over plaintiff's substantial hardship objection despite fact that plaintiff contacted fifty lawyers and not one of them would take her case). Finally, little (if any) discovery has yet taken place in this case, so successor counsel would not have to come into a case that was already well underway.

In conclusion, AMPICO and Shelby/Anthem have sustained their burden of proving that the plaintiff's attorneys will be "necessary witnesses" under Rule 3.7. In other words, they have established that there is a basis pursuant to Rule 3.7 for disqualifying the plaintiff's counsel, and the plaintiff has not proven that the disqualification of her attorneys will work a substantial hardship. Thus, the motion to disqualify shall be allowed.

## IV. CONCLUSION

For the aforementioned reasons, the Joint Motion to Disqualify Counsel for Plaintiff by the Defendants (# 56) shall be ALLOWED to the extent that on the date the District Judge renders her decision of the pending dispositive motion, Defendants' Motion for Summary Judgment (# 58), the plaintiff's current attorneys will be DISQUALIFIED from further representation of the plaintiff. The file is herewith RETURNED to the District Judge for further proceedings.