THIS ORDER IS A
PRECEDENT OF THE
TTAB

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

LTS

June 2, 2020

Opposition No. 91219179

*Spliethoff's Bevrachtingskantoor B.V.*

*v.*

*United Yacht Transport LLC dba United Yacht Transport*

**Lawrence T. Stanley, Jr., Interlocutory Attorney:**

This case now comes up on Opposer's motion, filed December 31, 2019 (78 TTABVUE), for leave to take additional depositions beyond the ten-deposition limit of Fed. R. Civ. P. 30(a)(2). The motion is fully briefed.

I.      **Relevant Background**

Applicant seeks to register UNITED YACHT TRANSPORT in standard characters for "transport of yachts by boat" in International Class 39.[1] Pursuant to the Board's order of September 6, 2016, Opposer filed a third amended notice of opposition to the registration of Applicant's mark on grounds of fraud, likelihood of confusion, and nonuse in commerce. 56 TTABVUE. Opposer's likelihood of confusion claim includes an allegation of priority based on prior use in commerce of the identical

---

[1] Application Serial No. 86031633; filed August 7, 2013, under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a). "YACHT TRANSPORT" is disclaimed.

mark UNITED YACHT TRANSPORT by its predecessors-in-interest, United Yacht Transport (USA) Inc., Dockwise Yacht Transport (USA) Inc. ("Dockwise"), and Dockwise Yacht Transport LLC ("DYT"). *Id.* at 4, ¶¶ 11-12. Opposer alleges that on October 15, 2013, it obtained all rights in the mark UNITED YACHT TRANSPORT through an asset purchase agreement and by assignment from DYT. *Id.* at 3-4, ¶¶ 6-9. Opposer specifically alleges that it has priority because any earlier use by Applicant was unlawful under the Shipping Act of 1984. *Id.* at 15-17, ¶¶ 63-71.

By its answer, Applicant denies the salient allegations in the third amended notice of opposition and asserts abandonment as an affirmative defense. 65 TTABVUE. Specifically, Applicant alleges that Opposer's predecessors discontinued using the mark in the ordinary course of trade with the intent not to resume use.[2] *Id.* at 6-7.

Prior to filing its motion, Opposer had taken ten depositions: eight were noticed by Opposer and two were noticed by Applicant and cross-noticed by Opposer.[3] The ten depositions taken by Opposer are:

(1)    Clemens van der Werf (former president of DYT; taken May 30, 2019);

(2)    Lou Gnandt (PTZTV corporate records deposition; taken June 27, 2019);[4]

---

[2] Applicant also asserts as an "affirmative defense" that there has been no per se violation of the Shipping Act of 1984. 65 TTABVUE 7. This is not a true affirmative defense, and merely amplifies Respondent's denials. *ProMark Brands Inc. v. GFA Brands, Inc.*, 114 USPQ2d 1232, 1236 n.11 (TTAB 2015).

[3] The parties did not file any stipulations or motions regarding discovery depositions following their mandatory discovery conference, and it is not clear from the record how many of Opposer's actual and requested deponents were listed in either parties' initial disclosures.

[4] The parties do not explain what PTZTV is, other than to note that PTZTV's records contained videos of ships and boats arriving and departing Port Everglades. 78 TTABVUE 21.

(3) Dennis Cummings (former consultant to Applicant; taken July 29, 2019);

(4) Laura Tempest (former Dockwise employee and current DYT employee; taken July 30, 2019);

(5) Ellen Kennedy (Rule 30(b)(6) corporate representative of Broward County, Florida (Port Everglades); taken October 15, 2019);

(6) John Tang, Esquire of Clark Hill Strasburger (trademark attorney for Dockwise; taken October 23, 2019);

(7) Garney Griggs, Esquire of Clark Hill Strasburger (attorney for Dockwise; taken October 23, 2019);

(8) Richard Klabbers (Board member and representative of Opposer; taken November 14, 2019)

(9) Jonathan Zier (former employee of Opposer and Dockwise; deposition cross-noticed by Opposer; taken October 24, 2019)

(10) Catalina Bujor (former employee of Opposer and DYT; deposition cross-noticed by Opposer; taken October 30, 2019).

78 TTABVUE 21-23.

Opposer now seeks to take the following additional depositions:

(1) Paul Haber, Applicant's President;

(2) Rule 30(b)(6) deposition of Applicant concerning the claims and defenses raised in this proceeding, if Paul Haber is not so designated;

(3) Alexander Zimmer, Applicant's former trademark attorney who signed Applicant's pending application and Applicant's Response to Office Action;

(4) Michael Uhr, Applicant's manager as identified in public records;

(5) Neil B. Mooney, Esquire, Applicant's expert; and

(6) One additional fact witness deposition concerning Applicant's knowledge of the use of the mark by Opposer's predecessors, or the claim and defense of Applicant's alleged unlawful use of the mark, if the need for same is revealed by the testimony of the foregoing witnesses.

*Id.* at 2-3.

3

## II.     Legal Standard

Trademark Rule 2.116(a), 37 C.F.R. § 2.116(a), states that "[e]xcept as otherwise provided, and wherever applicable and appropriate, procedure and practice in inter partes proceedings shall be governed by the Federal Rules of Civil Procedure." The Trademark Rules do not specify a limit on the number of discovery depositions. Therefore, the deposition limit of the Federal Rules of Civil Procedure applies in Board proceedings.

The Federal Rules of Civil Procedure limit parties to ten oral depositions each, but a party may seek leave to conduct additional depositions. Fed. R. Civ. P. 30(a)(2)(A)(i); TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 404.02 (June 2019). At least two objectives underpin this requirement. The first is "to assure judicial review under the standards stated in Rule 26(b)(2) before any side will be allowed to take more than ten depositions in a case without agreement of the other parties." Advisory Committee Note to the 1993 Amendment. The second is "to emphasize that counsel have a professional obligation to develop a mutual cost-effective plan for discovery in the case." *Id.*

Where the Trademark Rules are silent as to procedural issues, the Board looks to precedential decisions issued by the Board or by the Board's reviewing court, and, where appropriate, decisions from various other federal courts interpreting the Federal Rules of Civil Procedure. The standard by which the Board should determine whether to allow a party more than ten depositions is not defined in the Trademark Rules, the Federal Rules of Civil Procedure, Board precedent, or any decision of the

4

Board's reviewing court. Therefore, the Board looks to decisions from federal courts interpreting the Federal Rules of Civil Procedure. *See Multisorb Tech., Inc. v. Pactiv Corp.*, 109 USPQ2d 1170, 1171 (TTAB 2013) ("[T]o enhance predictability and consistency, the Board also generally follows settled federal practice when deciding cases raising procedural issues that fall within the interstices between the provisions in the Federal Rules, the CFR, and the Trademark Board Manual of Procedure"); *cf. Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 6 USPQ2d 1001, 1004 (Fed. Cir. 1988) ("The PTO rules governing the procedure in inter partes proceedings such as oppositions are adapted from the Federal Rules, with modifications appropriate to the administrative process.").

A party seeking leave to take more than ten depositions must make a "particularized showing" of why the discovery is necessary. *Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn.*, 187 F.R.D. 578, 586 (D. Minn. 1999); *see also Bell v. Fowler*, 99 F.3d 262, 271 (8th Cir. 1996) (district court did not abuse its discretion in denying motion to take additional depositions where plaintiff "presented no good reason why the additional depositions were necessary"). Although the scope of discovery under the Federal Rules is broad, it is not unfettered. The Board must limit the extent or frequency of discovery if it finds that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Further, the Board may consider the necessity of each deposition previously taken without leave of the Board. *See Madison v. Jack Link Assocs. Stage Lighting & Prods., Inc.*, 297 F.R.D. 532, 535 (S.D. Fla. 2013) ("[C]ourts have construed Rule 30(a)(2)(A) ... to require a party seeking leave of court to exceed the [ten]-deposition limitation to justify the necessity of each deposition previously taken without leave of court.") (citation omitted); *Barrow v. Greenville Indep. Sch. Dist.*, 202 F.R.D. 480, 482 (N.D. Tex. 2001) (a party seeking leave to take more than ten depositions "must demonstrate the necessity for each deposition [it] took without leave of court pursuant to the presumptive limit of Rule 30(a)(2)(A).").

By considering the depositions that were previously taken, the Board may prevent a party from "circumvent[ing] the cap on depositions by exhausting the maximum allotted number to take those that [it] could not justify under Rule 26(b)(2) standards, and then seeking leave to exceed the limit in order to take depositions that it could substantiate." *Barrow*, 202 F.R.D. at 483.

The Board has broad discretion in managing discovery in its proceedings. *FMR Corp. v. Alliant Partners*, 51 USPQ2d 1759, 1761 (TTAB 1999) ("Both the Trademark Rules and the Federal Rules of Civil Procedure grant the Board discretion to manage the discovery process."). The determination whether to authorize additional depositions beyond the ten-deposition limit is made on a case-by-case basis and "is essentially an exercise in discretion." *Barrow*, 202 F.R.D. at 482 (citing *Raniola v. Bratton*, 243 F.3d 610, 628 (2d Cir. 2001)). The mere fact that several individuals may

have discoverable information does not entitle the requesting party to depose each such individual under Rule 30(a)(2)(A). *See Talismanic Props., LLC v. Tipp City, Ohio*, 309 F. Supp. 3d 488, 497 (S.D. Ohio 2017); *cf. Baron Phillippe De Rothschild S.A. v. S. Rothschild & Co.*, 16 USPQ2d 1466, 1466-67 n.5 (TTAB 1990) ("the fact that the additional interrogatories served by opposer may be relevant and narrowly drawn to a single issue is insufficient, in and of itself, to demonstrate good cause" for additional interrogatories); *Brawn of Cal. Inc. v. Bonnie Sportswear Ltd.*, 15 USPQ2d 1572, 1574 (TTAB 1990) ("[T]hat the excessive interrogatories are relevant to the issues of the proceeding does not constitute good cause for granting a request for dispensation from the limits of the rule.").

Before noticing any deposition, a party should assess whether it would be proportional to the needs of the case and truly necessary, taking into account the time and expense involved for even one deposition. *See Emilio Pucci Int'l BV v. Sachdev*, 118 USPQ2d 1383, 1386 (TTAB 2016) ("The Board expects parties to take into account the principles of proportionality with regard to discovery."); *Domond v. 37.37, Inc.*, 113 USPQ2d 1264, 1268 (TTAB 2015) (proportionality principle applied to interrogatories, document requests and requests for admission); *The Phillies v. Phila. Consol. Holding Corp.*, 107 USPQ2d 2149, 2153 (TTAB 2013) (proportionality discussed with respect to requests for admissions); *see also* Fed. R. Civ. P. 26(b)(1); TBMP § 404.09.

In considering whether additional depositions are proportional to the needs of the case, the importance of the issues, the parties' relative access to relevant information,

the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit must be considered and balanced against the Fed. R. Civ. P. 26(b)(2) factors identified above. *See* Fed. R. Civ. P. 26(b)(1). Additionally, the limited relief that the Board, as opposed to a court of general jurisdiction, can grant should also be considered, as this generally will impact the scope of discovery. *See Frito-Lay N. Am., Inc. v. Princeton Vanguard, LLC*, 100 USPQ2d 1904, 1908 (TTAB 2011) (noting that "discovery is generally expected to be more extensive [in the federal courts] than in Board proceedings"); *Pioneer Kabushiki Kaisha v. Hitachi High Techs. Am. Inc.*, 74 USPQ2d 1672, 1674 (TTAB 2005) ("*Pioneer*") ("In view of the limited jurisdiction of the Board in deciding only issues of registrability, each party and its attorney has a duty not only to make a good faith effort to satisfy the discovery needs of its opponent but also to make a good faith effort to seek only such discovery as is proper and relevant to the specific issues involved in the case.") (quotation omitted); TBMP § 102.01 (Board's jurisdiction is limited to registrability determinations). Federal district courts have broader jurisdiction than the Board and thereby often handle significantly more complex cases than the Board; yet, they apply the same ten-deposition limit.

## III.   Analysis

The Board will address whether the parties agreed to exceed the deposition limit, the justification for the previous ten depositions Opposer already took, and Opposer's justification for the additional depositions it wants to take.

### A.     Agreement to Exceed Deposition Limit

Opposer argues that: (1) the parties communicated about scheduling depositions beginning in March 2019 and continuing through the summer; (2) the parties communicated again in November and December 2019 about scheduling the depositions of Messrs. Haber, Zimmer, and Uhr in December 2019 or January 2020; (3) Applicant did not raise an objection when those depositions were proposed; and (4) Applicant therefore "agreed to the taking of the depositions of Messrs. Haber, Zimmer, and Uhr and/or waived any objection under TBMP 404.02 as to these three depositions." 78 TTABVUE 8-10 and 19-20, ¶¶ 8-11. Applicant argues that the parties never stipulated to an enlargement of the ten-deposition limit, and it did not waive its right to object to the excess depositions because it objected as soon as it realized that Opposer had reached the limit. 80 TTABVUE 3-4.

For Opposer to exceed the deposition limit without leave of the Board, the parties must so stipulate in writing. *See* Fed. R. Civ. P. 30(a)(2). Here, there was no written stipulation. The emails exchanged between the parties in November and December 2019 do not indicate any agreement between the parties to exceed the deposition limit. 78 TTABVUE 24-40. Likewise, the declaration of Opposer's counsel does not provide enough information to establish that the parties agreed to exceed the deposition limit when they discussed depositions between March 2019 and the summer of that year, let alone stipulated in writing to do so. *Id.* at 19, ¶¶ 8-9.

Although Opposer asserts the parties discussed the depositions now proposed, there is no indication that the deposition list mentioned at that time included the ten

depositions that Opposer took **and** the depositions now proposed. There is no mention of the parties discussing all of these depositions during the discovery conference or after the exchange of initial disclosures. *See Influance, Inc. v. Zuker*, 88 USPQ2d 1859, 1860 n.2 (TTAB 2008) ("the obligation to confer and determine whether the parties can settle a case, or if not, at least plan for a cooperative exchange of disclosures and any possible discovery requests, is a shared responsibility"). That the parties may have discussed taking the depositions of the witnesses who are the subject of this motion does not mean that Applicant agreed Opposer could exceed the deposition limit under the Federal Rules of Civil Procedure or waived its right to object to excess depositions. Accordingly, on the current record, Opposer has not established that Applicant agreed to allow Opposer to exceed the deposition limit or otherwise waived its right to object to excess depositions.

### B. Depositions Already Taken By Opposer

The Board next considers the justification for the ten depositions that Opposer has already taken. As a whole, Opposer argues that the ten depositions it already took were necessary and not burdensome because they focused on obtaining evidence to support Opposer's claim of priority based on use of the mark by Opposer's predecessors and to refute Applicant's affirmative defenses of abandonment and lack of bona fide use. 78 TTABVUE 4 and 8. The Board considers the necessity of each of the depositions in turn.

First, the parties do not dispute that the deposition of Dennis Cummings (a former consultant to Applicant) was justified. Opposer asserts that "[o]nly one of the

witnesses that Opposer has deposed [Mr. Cummings] gave testimony relevant to Opposer's claims based on Applicant's bad faith adoption of the mark, void ab initio, fraud and unlawful use." *Id.* at 8. The testimony elicited from Mr. Cummings was neither burdensome nor cumulative of the testimony elicited in the other nine depositions taken by Opposer.

Second, five of the ten depositions Opposer noticed or cross-noticed were for its own witnesses: one current employee of Opposer (Mr. Klabbers), one current employee of DYT (Ms. Tempest), and three former employees of Opposer or Opposer's predecessors (Mr. van der Werf, Mr. Zier, and Ms. Bujor). The parties do not dispute that these witnesses provided relevant information. However, Opposer has not made a sufficient showing that it was necessary for Opposer to notice or cross-notice the **discovery** (as opposed to testimony) depositions of its own witnesses.[5] Parties do not require discovery of their own witnesses. Opposer appears to confuse discovery depositions and testimony depositions.[6] As Professor McCarthy explains:

> Confusion is also sometimes created by the two very different types of "deposition": the "discovery deposition" and the "testimonial deposition." The discovery deposition is very similar to that in civil litigation in the federal courts and usually consists of the deposition of the adversary's witnesses to prepare for the "trial" and for impeachment purposes. … The Trademark Board "testimonial deposition" is equivalent to direct and cross examination at trial in civil litigation. The purpose is to present testimony and evidence supporting one's own case. In civil

---

[5] Opposer does not explain why it "cross-noticed" two depositions, rather than appear and exercise its right to cross examine the witnesses. *See* Fed. R. Civ. P. 30; 8A Charles Alan Wright, et al., Fed. Prac. & Proc. Civ. § 2113 (3d ed. April 2020 Update). In any event, Opposer does not argue that the cross-noticed depositions should not count against the ten-deposition limit.

[6] Opposer refers to the deponents as providing "testimony" (78 TTABVUE 21-23) and acknowledges that, if Opposer moved for summary judgment, the testimony of its own witnesses could be submitted by declaration (81 TTABVUE 5).

> litigation, one rarely takes the discovery deposition of one's own client or favorable witnesses. Rather, one takes the deposition of opponent's witnesses and the deposition resembles cross-examination.

3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 7:81 (5th ed. March 2020 Update); *see also* TBMP § 404.09 (discussing the difference between discovery depositions and testimony depositions).

Under Trademark Rule 2.120(k), a party may not offer the discovery deposition of its own witness as trial testimony, except in certain situations. 37 C.F.R. § 2.120(k); TBMP § 704.09 ("The discovery deposition **of a party** (or of anyone who, at the time of taking the deposition, was an officer, director, or managing agent of a party, or a person designated under Fed. R. Civ. P. 30(b)(6) or 31(a)(4) to testify on behalf of a party) may be offered in evidence **by any adverse party**."). Testimony affidavits, declarations and depositions are the means by which a party may present the testimony of its witnesses. TBMP § 703.01. Nothing in the record suggests that these witnesses were compelled to attend by subpoena or otherwise unwilling to submit their testimony by affidavit or declaration pursuant to Trademark Rule 2.123, 37 C.F.R. § 2.123. *See generally* TBMP § 703.01. Indeed, Applicant asserts that these witnesses were represented by Opposer's counsel at the depositions. 80 TTABVUE 6.

To the extent Opposer argues that the Board would have ordered the depositions of these witnesses had Opposer filed a motion for summary judgment supported by the declarations of these witnesses and Applicant moved under Fed. R. Civ. P. 56(d) to take their depositions (81 TTABVUE 6), Opposer misses the point. Depending on the testimony set forth in the declarations and their import to the motion for

summary judgment, Applicant may or may not have sought to take the depositions, and if it did, Applicant may or may not have been allowed to take the depositions of the declarants under Rule 56(d). But had such depositions occurred, they would not have counted against Opposer's limit. Parties are expected to manage the case in a cost-effective manner and be cognizant of the deposition limit. *See* Advisory Committee Note to the 1993 Amendment. Opposer has not shown a need to rely on discovery depositions rather than the Board practice of taking testimony depositions of its own witnesses and therefore has not made a sufficient showing that the depositions are justified.

Third, the current record is unclear as to whether Opposer could have readily obtained authenticating testimony from the two record custodians for third parties PTZTV (Mr. Gnandt) and Port Everglades (Ms. Kennedy) by declaration or affidavit, rather than authenticate the records by deposition. Opposer asserts it requested that Applicant stipulate to the authenticity of PTZTV's records, Applicant refused, and Opposer conducted a "41-minute deposition by phone." 81 TTABVUE 6. On the current record, Opposer has not shown that these discovery depositions were justified. If Opposer wished to have the records of these third parties authenticated and could not obtain the authenticating testimony by declaration or affidavit, Opposer should have taken a testimony deposition, not discovery deposition, of these third parties during its testimony period. *See* Trademark Rule 2.116(e), 37 C.F.R. § 2.116(e); TBMP § 703.01.

13

Lastly, Opposer took the deposition of two attorneys from Dockwise's law firm, Clark Hill Strasburger, the trademark attorney for Dockwise (Mr. Tang) and a senior partner of the law firm, who is the "relationship manager" for Dockwise (Mr. Griggs). 78 TTABVUE 22. Opposer asserts that Mr. Tang "gave testimony and authenticated numerous emails and documents sent and received by law firm and Dockwise during the period of August 2013 through October 2013" on a number of topics, including "evidence of Dockwise's sale of rights in the mark, and intention to sell such rights, to Opposer[;] evidence supporting filing of Dockwise's '56 application …; [and] evidence regarding Dockwise's cease and desist letter to Paul Haber/Applicant sent by Tang and Tang's communications with Applicant's counsel re: same." 78 TTABVUE 22.

Opposer also asserts that Mr. Griggs gave testimony concerning "evidence of Griggs' discussions with Dockwise regarding Dockwise's common-law rights in the mark and intention to protect Dockwise's U.S. trademark rights in the mark and include it in its upcoming asset/business sale to Opposer." *Id.* Opposer further asserts that the testimony of both attorneys was relevant to Opposer's claim of priority and Applicant's abandonment defense. *Id.* Although the parties do not dispute that these witnesses provided relevant information, Opposer has not made a sufficient showing that it was necessary for Opposer to depose two attorneys from the same law firm. Similar to the current and former employees of Opposer and its predecessors, nothing in the record suggests that these witnesses were compelled to attend by subpoena or otherwise unwilling to submit their testimony by affidavit or declaration pursuant to

14

Trademark Rule 2.123, 37 C.F.R. § 2.123. *See generally* TBMP § 703.01. Furthermore, the topics on which these witnesses testified are cumulative of one another, as well as of the testimony of at least Mr. van der Werf, who also gave testimony concerning Opposer's common-law rights in the mark through its predecessor in interest. Opposer also could have instead covered the full range of topics in a single Fed. R. Civ. P. 30(b)(6) subpoena served upon the law firm, rather than deposing two attorneys from the same law firm in their individual capacities.

In sum, Opposer has made a sufficient showing as to only one of the ten previously taken depositions. The Board will balance Opposer's failure to justify nine of the depositions against Opposer's showing for the requested depositions.

## C. Opposer's Requested Depositions

The Board next considers whether Opposer has made "particularized showing" of why the requested discovery is necessary. *Archer Daniels Midland Co.*, 187 F.R.D. at 586. Opposer argues that it needs to "develop a full and fair record of evidence concerning all of Opposer's claims and of Applicant's affirmative defenses." 78 TTABVUE 14. Opposer argues that the depositions are necessary because "the additional depositions requested are to obtain information exclusively within the knowledge of Applicant concerning Opposer's claims of Applicant's bad faith adoption of the mark[,] fraud, void ab initio, and unlawful use that is not already part of the record evidence" and not burdensome because "[t]he additional depositions are few in number[.]" *Id.* at 4.

First, Opposer requests the depositions of Applicant's President (Mr. Haber) and Applicant's Rule 30(b)(6) witness. 78 TTABVUE 2. Applicant does not dispute that these witnesses will have relevant information as to the claims and defenses in this proceeding. However, as Applicant points out, their testimony will likely be cumulative. 80 TTABVUE 6-7. Indeed, Opposer recognizes as much, as it requests Mr. Haber's deposition and a Rule 30(b)(6) deposition "if Paul Haber is not so designated" as the Rule 30(b)(6) representative. Opposer does not present any evidence or argument for why **both** Mr. Haber's deposition and the deposition of the Rule 30(b)(6) witness are necessary. As such, only one of these depositions would be justifiable under the principles of Rule 26(b)(2). But, in view of Opposer's having wasted so many previously-taken discovery depositions, and Opposer's having had ample opportunity to take these depositions but instead electing to pursue other depositions first, the Board, as discussed further below, **denies** the request to take either of these depositions.

Second, Opposer requests the deposition of Mr. Zimmer, Applicant's former trademark attorney who signed the involved application and Response to Office Action. 78 TTABVUE 3. Opposer argues that, because "Alexander Zimmer is the Applicant's former trademark registration attorney who filed and signed Applicant's August 7, 2013, application and Applicant's May 19, 2014 Response to Office Action[,] Attorney Zimmer's investigation and search results prior to making his sworn declarations in support of these filings are relevant to Opposer's claims of fraud and void ab initio." *Id.* at 13.

The USPTO permits an attorney to sign the verification (e.g., a declaration) in support of an application, and other specified filings, on behalf of an applicant. *See* Trademark Rules 2.33(a) and 2.193(e)(1), 37 C.F.R. §§ 2.33(a) and 2.193(e)(1); TRADEMARK MANUAL OF EXAMINING PROCEDURE § 804 (Oct. 2018). Indeed, it is common for attorneys to do so. The mere signing of the declaration and Response to Office Action, however, does not create a circumstance where Mr. Zimmer alone would need to testify to the contents of those documents. *Cf. Carta v. Lumbermens Mut. Cas. Ins. Co.*, 419 F. Supp. 2d 23, 29 (D. Mass. 2006) (quoting *Merrill Lynch Bus. Fin. Svcs., Inc. v. Nudell*, 239 F. Supp. 2d 1170, 1173 (D. Colo. 2003) ("A lawyer is likely to be a necessary witness where the proposed testimony is relevant, material, not merely cumulative, and unobtainable elsewhere."); *accord Religious Tech. Ctr. v. F.A.C.T.Net, Inc.*, 945 F. Supp. 1470, 1474 (D. Colo. 1996) (quoting *World Youth Day, Inc. v. Famous Artists Merch. Exch.*, 866 F. Supp.1297, 1302 (D. Colo. 1994)).

To the extent Opposer argues that Applicant identified Mr. Zimmer "in Applicant's interrogatory answers as [a] person[] with relevant knowledge[,]" Opposer fails to give any context for that identification other than the fact that Mr. Zimmer "prepared and signed Applicant's trademark application" (81 TTABVUE 9 n.6). This does not satisfy the "particularized showing" standard in the context of this case. Accordingly, Opposer's motion to take the deposition of Mr. Zimmer is **denied**.

Third, Opposer requests the deposition of Mr. Uhr, whom Opposer describes as being "identified in news articles as being the owner/member of the Applicant's LLC at the company's inception, i.e. at the time when the decision was made by Applicant

17

to adopt the mark for use in its business." 78 TTABVUE 13. Applicant disputes that Mr. Uhr would provide noncumulative, relevant testimony. 80 TTABVUE 7. On the current record, Opposer has not made a particularized showing that Mr. Uhr's deposition is justified. It is unclear whether Mr. Uhr has discoverable information to provide, and if so, how that information would be noncumulative of other witnesses. *See Pioneer*, 74 USPQ2d at 1674 (Board granted protective order barring three discovery depositions as duplicative and unnecessary). Accordingly, Opposer's motion to take the deposition of Mr. Uhr is **denied**.

Fourth, Opposer requests that it be permitted to take an additional deposition of an unnamed witness who may have information concerning "Applicant's knowledge of the use mark (sic) by Opposer's predecessors, or the claim and defense of Applicant's unlawful use of the mark, if the need for same is revealed by the testimony of the foregoing witnesses." 78 TTABVUE 3. Opposer's request for the deposition of a "to be determined" witness is not well taken. Opposer has not made a particularized showing of the need to depose an unnamed witness of its choosing at a later date; nor is it even possible to make a particularized showing of an unknown witness. Accordingly, Opposer's motion to take the deposition of an unidentified additional witness is **denied**.

Lastly, Opposer requests the deposition of Applicant's expert, Mr. Mooney. 78 TTABVUE 3. Opposer asserts that Mr. Mooney "produced a report in support of Applicant's third Affirmative Defense, opining that Applicant was not operating in

violation of the Shipping Act of 1984."[7] *Id.* 13. Applicant does not dispute that Mr. Mooney's deposition is justified. The Board finds that Opposer has made a sufficient showing that Mr. Mooney's deposition is justified under the principles of Rule 26(b)(2).

On the current record, the Board views Opposer's motion to take the deposition of Applicant's expert, Mr. Mooney, on a different footing than the other requested depositions. Whereas the record establishes that Opposer has known since early in the case of its need to depose Mr. Haber (whom Opposer asserts is identified in Applicant's initial disclosures) (81 TTABVUE 9 n.6), the same is not true for Mr. Mooney. The Board has noted that "expert testimony is expensive and typically not utilized in Board proceedings." MISCELLANEOUS CHANGES TO TRADEMARK TRIAL AND APPEAL BOARD RULES, 72 Fed. Reg. 42,242, 42,254 (Aug. 1, 2007). "A party generally must decide within the discovery period whether it plans to use an expert to testify at trial since expert disclosure is due 30 days prior to the close of discovery, or by any deadline that may be reset by any order of the Board issued after the initial institution order, but the expert disclosure deadline must always be scheduled prior to the close of discovery whenever disclosure and discovery deadlines are modified." TBMP § 401.03. As such, parties typically do not learn of the need to depose an expert

---

[7] Any party disclosing plans to use an expert must notify the Board that it has made the required disclosure (but should not file with the Board copies of the materials provided to adverse parties) to comply with Fed. R. Civ. P. 26(a)(2). TBMP § 401.03. Applicant did not notify the Board of its expert disclosure, and it is unclear on the current record when the disclosure was made. However, a disclosing party's failure to inform the Board of timely disclosure of an expert witness is not a ground to exclude the testimony of such witness. TBMP § 533.02(b).

until late in the discovery period. Furthermore, Mr. Mooney's testimony would be neither duplicative nor cumulative of testimony already obtained. *See Chevron Corp. v. Shefftz*, 754 F. Supp. 2d 254, 265 (D. Mass. 2010); *Andamiro U.S.A v. Konami Amusement of Am., Inc.*, 59 USPQ2d 1094, 1096 (C.D. Cal. 2001).

On this record, the Board exercises its discretion to allow the deposition of Mr. Mooney. Accordingly, Opposer's motion to take the deposition of Mr. Mooney is **granted**.

### D. Summary

Absent a stipulation or Board order authorizing additional depositions, it was incumbent upon Opposer to proceed according to the presumptive deposition limit set forth in the federal rules. There was no basis for Opposer to believe that it would not be held to that limit. A party should not use depositions on its own witnesses or those whom other means are available to obtain discoverable information and then approach the Board for leave to exceed the deposition limit because more important witnesses, including Rule 30(b)(6) representative(s) or the other party's officers, have not been deposed. That Opposer chose to take unnecessary depositions while foregoing important ones was an unfortunate strategic decision, but not a basis for granting the relief sought.

Opposer has not demonstrated that it used its allotted ten depositions in a judicious manner. Opposer should have used one or more of its allotted ten depositions for a Rule 30(b)(6) deposition of Applicant or depositions of its officers. In view of Opposer wasting several of its ten discovery depositions, Opposer's motion to

take the deposition of Mr. Haber and a Rule 30(b)(6) deposition of Applicant is **denied**. As discussed above, Opposer's motion to take the depositions of Mr. Uhr, Mr. Zimmer, and an unnamed witness is **denied** for failure to make a particularized showing.[8]

Because the Board views Opposer's motion to take the deposition of Applicant's expert, Mr. Mooney, differently, the Board exercises its discretion to allow the deposition of Mr. Mooney. Accordingly, Opposer's motion to take the deposition of Mr. Mooney is **granted**.

\* \* \*

As this decision makes clear, the Board will generally be quite reluctant to grant leave to take more than ten depositions, and parties are instructed to plan accordingly. *Emilio Pucci Int'l BV*, 118 USPQ2d at 1386-87 ("The Committee Notes make clear that the parties are expected to effectively manage discovery, and that there are 'important occasions for judicial management' Fed. R. Civ. P. 26(b)(1) Advisory Committee Note (2015 amendment). … In the context of determining the appropriateness of discovery-related motions seeking the Board's involvement, the Board will look to, among other factors, whether the filing party seeks a remedy that is proportional to the nature and complexity of the case and the history of the proceeding.").

---

[8] To be clear, the Board is denying Opposer's motion with respect to Messrs. Haber, Zimmer, and Uhr and the Rule 30(b)(6) witness of Applicant because Opposer failed to meet its required burden to make a particularized showing to **exceed** ten depositions. If Opposer was not seeking to depose more than ten witnesses, then Opposer could have simply timely noticed most of these depositions.

## IV.     Proceedings Resumed

Proceedings are **resumed** and remaining discovery and trial dates are reset as indicated in the schedule set forth below. The Board is cognizant of the difficulties created by the COVID-19 pandemic and understands that scheduling depositions during the pandemic may be problematic. The parties are encouraged to consider taking any further depositions by telephonic or electronic means. If the parties believe that an extension of discovery and trial dates is necessary to allow them additional time to complete discovery based on the effects of the COVID-19 pandemic, the Board will entertain an appropriate motion to extend time.

| | |
|---|---|
| Discovery Closes | 8/3/2020 |
| Plaintiff's Pretrial Disclosures Due | 9/17/2020 |
| Plaintiff's 30-day Trial Period Ends | 11/1/2020 |
| Defendant's Pretrial Disclosures Due | 11/16/2020 |
| Defendant's 30-day Trial Period Ends | 12/31/2020 |
| Plaintiff's Rebuttal Disclosures Due | 1/15/2021 |
| Plaintiff's 15-day Rebuttal Period Ends | 2/14/2021 |
| Plaintiff's Opening Brief Due | 4/15/2021 |
| Defendant's Brief Due | 5/15/2021 |
| Plaintiff's Reply Brief Due | 5/30/2021 |
| Request for Oral Hearing (optional) Due | 6/9/2021 |

Generally, the Federal Rules of Evidence apply to Board trials. Trial testimony is taken and introduced out of the presence of the Board during the assigned testimony periods. The parties may stipulate to a wide variety of matters, and many requirements relevant to the trial phase of Board proceedings are set forth in Trademark Rules 2.121 through 2.125. These include pretrial disclosures, matters in evidence, the manner and timing of taking testimony, and the procedures for

submitting and serving testimony and other evidence, including affidavits, declarations, deposition transcripts and stipulated evidence. Trial briefs shall be submitted in accordance with Trademark Rules 2.128(a) and (b). Oral argument at final hearing will be scheduled only upon the timely submission of a separate notice as allowed by Trademark Rule 2.129(a).